CASE 82—PETITION EQUITY—NOVEMBER 20

# Hartford Insurance Company v. Haas, &c.

APPEAL FROM DAVIESS CIRCUIT COURT.

1. INSURANCE—FALSE STATEMENTS IN APPLICATION OR POLICY.— Where one who is ignorant and illiterate trusts alone to the superior knowledge of an insurance agent, who undertakes to make such an application, or to issue such a policy, as will meet the requirements of the company he represents, and the statements embodied in the application or policy issued under such circumstances are false or erroneous, they should be regarded as the act of the company, the insured being guilty of no fraud or misrepresentation.

2. SAME—KNOWLEDGE OF AGENT THAT OF COMPANY.—Where an agent issues a policy of fire insurance upon property of which the insured is not the absolute owner, with knowledge of the nature and extent of the interest of the insured, the knowledge of the agent is that of the company, whether or not it has been acquired in the course of his employment as agent; and the contract is valid to the extent of the interest of the insured, although the policy provides that it shall be void if the insured is not the absolute and unconditional owner.

3. AGENT TREATED AS PRINCIPAL.—Where the agent is not required to consult his principal before making the contract of insurance complete, his acts should be regarded as if he were in fact the principal.

4. CASE.—An ignorant German woman, unable to write or read the English language, procured insurance upon a house and lot in which she had a dower interest and her children the fee. She did not know the difference between a title in fee and a dower interest, and was entirely ignorant of what the policy contained. The policy provided that it should be void if the insured was not the owner of the property in fee-simple. There was no written application, and the insured

made no representation as to the nature or extent of her interest. The agent, who had power to effect insurance without consulting the home office, knew all about the nature and extent of her title, having acquired that knowledge in another business transaction. She had been insuring with the same agent for several years, and often in the same company, paying her annual insurance upon the entire cash value of the property insured. *Held*—That the interest which the insured had in the property was secured by the policy.

5. INSURABLE INTEREST.—The insured,.having relieved the property from the lien of a purchase money note out of her own means, had an insurable interest to that extent in addition to her dower interest, and the fact that her children might have defeated a recovery by her, by reason of the lapse of time, is not in the way of her recovery against the company, although it has pleaded limitation as to this part of her claim.

6. MISTAKE—REFORMATION OF POLICY.—The mere fact that the insured supposed she was insuring the interest of her children, as well as her own interest, was not sufficient to authorize the chancellor to reform the policy so as to include their interest, as nothing was said as to the nature and extent of the interest insured.

7. MOTION TO TRANSFER.—After the court had adjudged that the contract could not be reformed, thus disposing of the equitable issue, it proceeded without objection to render judgment for the insured for the value of her interest. After this judgment had been rendered, the defendant, for the first time, moved to transfer the case to the ordinary docket. *Held*—That the motion came too late

8. SEPARATION OF CONCLUSIONS.—The case being in equity, it was not necessary for the judge to separate his findings of law and fact.

HAYCRAFT & SLACK AND EDWARD W. HINES FOR APPELLANT.

1. After the court had disposed of the only equitable issue in the case, appellant was entitled to a transfer to the ordinary docket and to a trial by jury   (Civil Code, section 12.)

2. The court did right in refusing to reform the policy.   The only power the court has is to change the written evidence of the contract so as to make it express the contract really made. The fact that the assured alone made a mistake, or that the parties mutually misunderstood each other, will not authorize the chancellor to reform the policy. (Wood on Insurance, secs. 480 and 481; Guernsey v. American Ins. Co., 17 Minn., 104; Cooper v. Farmers' Mutual Fire Ins. Co., 50 Pa. St., 307; Bryce v. Lorillard Fire Ins. Co., 55 N. Y., 240.)

3. The minds of the parties did not meet, and there was, therefore, in reality no contract. One party understood the matter one way and the other another. (Wood on Insurance, page 21.)

4. As the insured was not the absolute owner of the property insured, the

Hartford Insurance Company v. Haas, &c.

policy was void. The acceptance of a policy without any representations as to title, or any statement of the specific interest of the assured, amounts to a declaration on his part that his interest is absolute. (Lasher v. St. Joseph Fire & Marine Ins. Co., 86 Mo., 423; Mers v. Franklin Ins. Co., 68 Mo., 127.)

The assured must disclose his title fully and correctly, or the insurer will be relieved from liability on the policy. (Columbian Ins. Co. v. Lawrence, 2 Peters, 25; Franklin Fire Ins. Co. v. Coates, 14 Md., 285; Sussex County Mutual Ins. Co. v. Woodruff, 2 Dutcher, N. J., 541; Ætna Ins. Co. v. Tyler, 12 Wend., 507, and 16 Wend., 385; Strong v. Manufacturers' Ins. Co., 10 Pick., 40; Curry v. Commonwealth Ins. Co., *Ibid.*, 535; Smith v. Bowditch Ins. Co., 6 Cush., 448; Hayward v. N. E. Mut. Ins. Co., 10 Cush., 444; Brown v. Williams, 28 Me., 252; Birmingham v. Empire Ins. Co., 42 Barb., 547; Marshall v. Columbian Ins. Co., 7 Foster (N. H.), 157; Jenkins v. Quincy Ins. Co., 7 Gray, 370; Kibbs v. Hamilton Ins. Co., 11 Gray, 163; Fales v. Conway Ins. Co., 7 Allen, 46; Phillips v. Knox Ins. Co., 20 Ohio, 174.)

5. The knowledge of the agent can not be imputed to the company, unless he had knowledge at the time or so recently that he will be held not to have forgotten it. It is not sufficient that the agent, at some time in the past, had knowledge growing out of some other transaction.

6. But even if the agent had knowledge at the time of the extent of the interest of the assured, his knowledge was not the knowledge of the company. (Galbraith's Administrator v. Arlington Mut. Life Ins. Co., 12 Bush, 29; Mayes v. Hartford Fire Ins. Co., MS. Opinion; Western Assurance Co. v. Rector, 8 Ky. Law Rep.)

There is a limit to the agent's authority, and it certainly does not extend to the insuring of one man's property for the benefit of another. (Agricultural Ins. Co. v. Montague, 38 Mich., 548; Peoria M. & F. Ins. Co. v. Hall, 12 Mich., 202; Baldwin v. State Ins Co., 60 Iowa, 498.)

7. But if the policy was not already void, it was forfeited by reason of the false swearing of the assured in making out her proof of loss. (Security Ins. Co. v. Bronger, 6 Bush, 146.)

8. In any event the judgment is for too much, as the insured was entitled to recover only the value of her dower.

OWEN & ELLIS FOR APPELLEES.

1. The appellees were entitled to have the policy reformed. The premium the appellant exacted and received was for insuring the entire property, and it was the duty of the agent to have written the contract so as to make it conform to the agreement. The courts are especially ready to reform insurance contracts as the parties are never on an equal footing. (Rohrback v. Germania Fire Ins Co., 62 N. Y.,

47; 3 B. M., 231; 13 B. M., 312; May on Insurance, secs. 565, 566; Western Assurance v. Owen, &c., MS. Op., June 24, 1882.)

2. When an insurance agent takes charge of the application, or assumes without advice from the insured to write up the policy, the company is bound, and if mistakes are made it is the company's misfortune. (May v. Buckeye Mut. Ins. Co., 25 Wis., 291; Washington Fire Ins. Co., &c., v. Kelley, 32 Md., 421; 83 Ill., 302; Planters' Ins. Co. v. Myers, decided by Supreme Court of Miss. in 1878.)

3. The agents had knowledge of the extent of the interest of the assured, and their knowledge was the knowledge of the company.

4. The insured had an insurable interest. She had dower, and she had a lien for purchase money paid by her after the death of her husband. Both of these interests are insurable.

5. Mrs. Haas had the right to insure the whole property in her own name; she was in possession, her dower had never been allotted, and she was administrator and the guardian of the infant children.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

Margaret Haas and her children were the owners of a brick building in the town of Owensboro, upon which insurance was obtained by her for the sum of two thousand dollars in the Hartford Insurance Company. The premium paid was thirty-two dollars, and the insurance against loss or damage resulting from fire. The fee was in the children of Mrs. Haas, her interest being confined to her dower and a lien for a purchase money note that had been taken up by her after the death of her husband out of her own means.

The policy of insurance is issued in the name of Margaret Haas, without reference to her interest or that of her children, and contains a stipulation to the effect that "if the assured is not the absolute and unconditional owner of the property insured, or if said property be a building and the assured is not the owner of the land in fee-simple on which the building stands, and this fact is not expressed in the written portion

of the policy,  *  *  *  then, and in every such case, the policy shall be void."

The building was destroyed by fire, and the appellant (the insurance company) contests the right of recovery on two grounds—

First. The assured was not the owner in fee of the property insured, and failed to disclose her interest.

Second. The house became vacant during the life of the policy, and was unoccupied when destroyed, the policy providing that in such a state of case the liability of the company should terminate.

The appellee, Mrs. Haas, ascertaining the character of defense relied on, filed her petition in equity, seeking to reform the policy, alleging that the contract of insurance as made with the agent was to insure not only her interest but that of her children, and by mistake the provision for the children was omitted, and seeks to recover such a sum as she may be entitled to under the contract. The averment with reference to the character of the contract, as well as the mistake in its execution, was traversed by the company, and the defenses already alluded to relied on to defeat any recovery.

That the appellee supposed she was insuring the interest her children had as well as her own is evident; but from the testimony it seems there was nothing said as to the nature and extent of the interest insured, and the chancellor could not well enlarge the liability of the company by inserting a provision in the policy for the benefit of the children, when the only reason assigned for so doing consists in the belief by the mother that she had insured their interest in the property as well as her own.

The question then arises, is the policy or contract of insurance void because of the failure of Mrs. Haas to state the real nature of her title?

There is no pretense that the assured made any representation, false or otherwise, in regard to the property she was insuring or her interest in it. She seems to have acted in the best of faith, believing that she had the right to insure the house at its full value, and was entitled to receive from the company its fair cash value in the event it was destroyed by fire during the life of the policy. So we have a case where the assured had an insurable interest, but having failed to state that she had less than a fee-simple title, it is urged that the entire contract is void. The importance of disclosing the nature of the interest of the assured in the subject-matter insured can not be overlooked, and such a stipulation in the contract will be enforced, because binding on all the parties, although the assured may have regarded it as not essential at the time of entering into the contract, or have been ignorant, in the absence of some fraud practiced upon him, that the policy contained such a stipulation.

The evidence in this case shows, however, that the assured was an illiterate German woman, unable to write or read the English language, and dependent upon those with whom she contracted for the necessary information touching such a business transaction as that of insuring her property. She did not know the difference between a title in fee and a dower interest, and was entirely ignorant of what the policy contained. In this condition, as the proof clearly shows, she relied on the general agent of this com-

pany to inform her, or rather to instruct her as to the nature of her rights. She had been insuring with the same agent for ten or twelve years, and often in the same company, paying her annual insurance upon the entire cash value of the property insured. This agent was invested with a general and plenary power not only to solicit but to effect insurance without even consulting the home office. He lived in the same town with the appellee; was fully apprised of her ignorance in regard to this business matter; sought and solicited her to insure her property, and, as the testimony shows, knew all about the nature and extent of her title. He knew this from having an actual examination made by those competent to investigate such a question; and now to hold that these parties, under such circumstances, were dealing at arm's length, and for that reason declare the policy void, would be a mere mockery of justice, and give to this derelict company the earnings for years of this confiding German woman, when the company or its agents knew that if the property was destroyed by fire it would render the policy void. The agent states, and it is doubtless true, he had forgotten the fact of investigating the title, yet the facts are so conclusive on that subject as to leave no doubt on this branch of the case. Nor do we undertand that the agent is attempting to shield the company from liability; but his connection with the transaction must be treated as if this woman were dealing directly with the principal at the home office and not with the agent.

If the principal knew the extent of appellee's interest, and had insured the property without any fraud

or misrepresentation by her of her title, could any chancellor under the circumstances deny her relief to the extent of her insurable interest? In May on Insurance, section 143, page 161, it is said: "It has in fact been very generally held that knowledge by, or notice to, the agent of the inaccuracy of a statement in the application upon which a policy is issued after such notice or knowledge binds the company, and prevents them from availing themselves of the inaccuracy as a defense. And this is true, even though the policy provide that when the application is made through an agent of the company, the applicant shall be responsible for such agent's representations."

In this case there was no application made in writing. The sub-agent, or the agent of the principal agent, appeared and solicited a renewal of the policy, and it was then signed or filled up at the agent's office and delivered to the appellee. We are not disposed to adjudge that such contracts, shingled over with stipulations that are practically deceptive, if not inserted for that purpose, are binding on the ignorant and illiterate, when guilty of no fraud or misrepresentation, but have trusted alone to the superior knowledge of the agent, who undertakes to make such an application or to issue such a policy as will meet the requirements of the company he represents. The statements embodied in a policy issued under such circumstances, if false or erroneous, should be regarded as the act of the insurer. "The modern decisions," says Mr. May, in his work on Insurance, "fully sustain this proposition, and are founded on reason and justice." (May on Insurance, page 165; Rowley v. Empire Ins. Co., 36 New York, 550.)

It is urged by the appellant, that as the knowledge acquired by the agent of the nature of appellee's title was derived in the prosecution or transaction of business engagements entirely disconnected with the matter of insurance, therefore the knowledge of the agent should not be held that of the principal.

We think it immaterial in what manner the information was acquired, whether in the course of his employ as agent or otherwise; he had personal knowledge of the fact that the fee to the property was in the children of the assured, and the appellee should not be made the victim of this neglect on the part of the agent, and the insurance company obtain the benefits of the toil and labor of this woman for years in raising the means with which to keep up her insurance. Here the agent was the sole judge as to whether he would issue the policy. He was not required to consult his principal before making the contract of insurance complete, and his acts should be regarded as if he were in fact the principal. (Harriman v. Queen's Ins. Co., 49 Wis., 71.)

The interest, therefore, that the appellant had in this insured property was secured by this policy. The extent of that interest is another question involved.

That as widow she had a dower interest will not be controverted, and it further appears that she relieved the property from the lien of a purchase money note out of her own means and held it against the estate. The appellant, in order to defeat this claim, has relied on the statutory bar, as if the appellee were attempting by a suit in equity to enforce this lien against the protest of her infant children. Whether

the children could defeat a recovery by the mother, by reason of the lapse of time, we will not stop to inquire. The company is not a creditor of the estate, or interested in any manner in the property itself.

It is liable to the extent of appellee's interest in the house or building destroyed, and the plea of limitation is not in the way of a recovery.

There are several issues of fact raised by the pleadings and proof; one as to the value of the property, and another in regard to the property having been left vacant. The view taken by the court below is sustained by the testimony on the several issues.

It is also complained that the court below erred in refusing to transfer the case to the ordinary docket, after having adjudged that the contract could not be reformed, and the widow could only recover to the extent of her interest.

It appears that, after the equitable issues had been tried, the court, without objection, proceeded to render judgment for the appellee for the value of her interest, which, including the lien note, amounted to one thousand three hundred and sixty-four dollars with interest. After this judgment had been rendered, the appellant for the first time moved to transfer the case. It was then too late; nor was it necessary for the trial court, the case being in equity, to separate in his findings the law from the facts; and if it had been, the law, as well as the facts presented, has been fully considered.

The appellee, in her proof of loss and in an ordinary action that was for some reason dismissed, swore that she held the fee-simple title, and it is argued that this should estop her from a recovery in this case.

We have already in effect determined this branch of the case.

It is plain that no fraud, misrepresentation or bad faith is to be attributed to the appellee, and equally certain that she failed to comprehend the character of her title, and labored under the belief, until this issue was raised by the company, that she had obtained a policy that covered fully the cash value of the entire building. In this she was mistaken; but there is no reason in law, equity or justice for denying her right to recover the value of her own interest in the subject-matter of the contract. This having been adjudged to her by the chancellor, his judgment is now affirmed on the original and cross-appeal.