## Farmer v. Cornett.

(Decided March 13, 1917.)

### Appeal from Harlan Circuit Court.

Appeal and Error—Finding of Chancellor—Evidence.—In an action in equity the chancellor's judgment is entitled to some weight, but the Court of Appeals will weigh and judge of the sufficiency of the evidence for itself, and where it is found to preponderate for one side or the other in such a way as to convince it that the chancellor erred, his judgment will be reversed. The evidence examined in this case and held the title bond upon which the appellant relies was executed as she claimed, and that the appellee had notice of it when he purchased the land attempted to be conveyed by the bond, and that the trial court erred in holding to the contrary.

BROCK & BROCK for appellant.

J. S. FORESTER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Claiming to be the owner of the land involved in this suit through a title bond executed to her on August 24, 1899, by Tip L. Farmer, the appellant (plaintiff) brought this suit against appellee (defendant) to cancel a deed which Farmer executed to him on May 4, 1901, conveying the land to defendant. The relief prayed for is that the deed be cancelled and that defendant's claim to any interest in the land be adjudged invalid and that he be declared to have acquired the title to it as trustee for the plaintiff and to convey it to her, which, if refused,. that it be done by the court through its commissioner. It is not only alleged that Tip Farmer executed the title bond to the plaintiff, but also that the defendant when he acquired his title had actual notice of that fact.

The answer denied the execution of the bond to plaintiff by Farmer, and further denied that defendant had knowledge of any kind of the existence of it at the time he obtained his deed from Farmer. Considerable proof was taken, and upon final submission the court entered judgment dismissing the petition and adjudging the defendant to be the owner of the land, and to reverse that judgment, plaintiff prosecutes this appeal.

The two questions presented are ones of fact only, they being: (1) whether the bond was executed to plaintiff as she contends; and, (2) the bond not having been recorded, did defendant have actual knowledge of it at the time he made his purchase of the land? The determination of these questions, which we will consider in the order named, calls for a brief review of the testimony taken and heard upon the trial.

As to the first one, we are clearly convinced that the bond was executed and delivered to plaintiff, as alleged by her. She and several of her children who were old enough to remember the facts, testify positively that Tip Farmer did execute the bond, as plaintiff contends, and it was delivered to her at her house, the former living something like a quarter of a mile from plaintiff. Upon that day the proof shows that there was delivered to Farmer by plaintiff as the first payment, a cow which belonged to her, and which was accepted at the price of $25.00. Afterwards plaintiff surrendered to Tip Farmer a note for $50.00 which she held against one Garrett, who had purchased from her lands which she inherited from her father, and which she had sold to Garrett for the price of $200.00. This note which Garrett paid to Tip Farmer was a part of that purchase price. It is furthermore shown that plaintiff afterwards paid to Tip Farmer $10.00 in cash, and assumed and subsequently paid a merchandise account for $15.00, which completed the $100.00, the price she agreed to pay for the land. The bond purports to have been witnessed by R. L. Farmer, a brother of Tip Farmer, and likewise a brother of plaintiff's husband.

Some year or more after plaintiff obtained her bond, Tip Farmer executed a similar one to her husband, who held it for a few weeks and transferred it to the defendant, who shortly thereafter obtained the deed heretofore referred to. R. L. Farmer wrote the last bond mentioned, and which he admits in his testimony, but

denies that he wrote the one to plaintiff. Both of the bonds were destroyed by fire, they having been filed in the papers of a former suit between plaintiff and defendant, all of which were destroyed in 1913, when the office of plaintiff's attorneys burned in the town of Harlan. It is shown by witnesses who saw the bonds before they were destroyed that they were each in the same handwriting, and that the signature of R. L. Farmer to plaintiff's bond was his signature. This is not, to say the least of it, convincingly denied. It is true defendant and R. L. Farmer, who appears from this record to be an active partisan of defendant, say they do not *think* that the writing in each of the bonds was the same, or that the signature of R. L. Farmer was made by him as a witness to plaintiff's bond, but this denial is of such a nature as to have but little convincing force with us. Tip Farmer's widow, who has since become Mrs. Wynn, is also positive that her husband executed the bond to plaintiff. There are other circumstances such as usually develop in a case of this kind, which, coupled with the testimony we have referred to, make it conclusive to our minds that the bond was executed and delivered to the plaintiff, and that she fully paid the consideration which she completed within at least the space of a year from the date of the bond.

Turning now to the second question, that of notice to the defendant at the time he acquired his deed, we find that Mrs. Winn (*nee* Farmer), testified positively, as well as intelligently, that on the day she signed the deed to defendant as the wife of Tip Farmer, she at first declined to do so, stating to defendant and others then present as her reasons for declining that such action by herself and husband would be in fraud of the rights of plaintiff, who had purchased the land by the bond which she held and had paid for it. She says that defendant finally persuaded her to sign the deed by saying that he would make it all right with plaintiff, or this in substance.

Another witness who knew of plaintiff's bond testified to a conversation in the town of Harlan between the defendant and Tip Farmer before the former acquired any rights in the land and in which the plaintiff's claim was mentioned, and witness said that defendant stated therein in substance that he knew of her claim and understood all about it; that Tip Farmer then said he would make it all right with plaintiff. This is denied by

the defendant as well as by R. L. Farmer, whom the witness said was present, but the evidence shows that directly after this a deed duly executed by plaintiff's husband to her for a part of his land was tendered to her, which she declined to accept, and there is proof in the case that if defendant did not prepare the deed he knew of it, and was instrumental in causing it to be executed; at least there are circumstances pointing to this conclusion. Later another and similar deed was prepared by defendant's son, who, as notary public, took the acknowledgment of plaintiff's husband to it, and the son offered to deliver that deed to plaintiff, which she likewise declined to accept. Defendant attempts to explain his connection with these two deeds by saying in substance that plaintiff's husband had been profligate with her means and that he (defendant) was endeavoring to restore to plaintiff the property belonging to her which her husband had thus spent, and that his participation was prompted by plaintiff's request for him to do so. This the plaintiff denied. Defendant also denied having been present at the time Mrs. Wynn signed the deed to him, and two witnesses corroborate him. On the other hand, in addition to what Mrs. Wynn said about defendant being present, it is shown by several witnesses that on that day defendant passed plaintiff's house in company with the deputy clerk who took the acknowledgment to the deed, going in the direction of the home of Tip Farmer. There is evidence, also, to the effect that defendant requested plaintiff's husband to procure a bond from Tip Farmer for the land and he would purchase it from the husband, which, as we have seen, was done, but defendant denied any such arrangement with the husband.

It furthermore appears that defendant was purchasing mineral rights about that time in lands in that community, and that he owned land adjoining that involved in this case. Also that plaintiff lived on land owned by her husband which adjoined the land involved, but either about the time of the date of the bond executed to the plaintiff, or shortly thereafter, the mineral was sold from under it to the defendant and when the deeds hereinbefore mentioned which plaintiff's husband executed and which were tendered to her, conveyed only the surface of the land described in them. It is shown that Tip Farmer, R. L. Farmer and Paris Farmer (plaintiff's husband), who are brothers, were great friends of the

defendant and were men of weak and vacillating disposi-
tions. They were not only addicted to a considerable
extent to the drink habit, and easily influenced by pros-
pects of such indulgences, but they entertained but little
or no regard for the marital vow, and promiscuously
indulged in immorality along this line, and it is easily
gathered from the testimony that these brothers, espec-
ially Tip and Paris Farmer, could be readily led and
influenced into any transaction which would enhance
their opportunities to engage in the indulgences to which
we have alluded. There is considerable room for the
suspicion that defendant knew this, and perhaps at-
tempted to profit by such knowledge, for it is conclus-
ively shown that plaintiff's husband knew about the bond
which his brother had executed to his wife, but notwith-
standing, he afterward procured a similar one executed
to himself, and within a few weeks thereafter trans-
ferred it to the defendant.

The plaintiff is, and has been since prior to the exe-
cution of the bond under which she claims, an invalid,
during all of which time she has been confined to her
house. Her reason for purchasing the land in contro-
versy as stated by her is that her husband had the dis-
position and tendency hereinbefore described, and that
at that time he was living in open adultery with another
woman, and to guard against the certain result of such
a course if continued, she concluded to invest the re-
mainder of the pittance which she received from her
father, in land to which she could move and have a home
when the inevitable came upon her, and we are not in-
clined to treat this as an unnatural reason for her course
in the matter. On the contrary, we regard it as per-
fectly natural and in perfect accord with the best human
instincts and judgment.

It is not to be forgotten that the method of trans-
ferring the title to land by bonds of the nature here in-
volved seems to have been universally prevalent in that
section of the state where the land in controversy is
situated, and similarly prevalent seems to have been the
custom to neglect or disregard the recording of such title
papers; these local customs have heretofore prevailed to
such an extent as to become matters of common knowl-
edge. It is explained in this case that the reason why
the bond was not followed by a deed is because Tip
Farmer, who executed it, died some time in 1902. An-
other fact not to be overlooked is that the attorney who

prepared defendant's deed was not introduced by him as a witness in the case, nor were other witnesses whom the record shows stood in a favorable attitude to him, and in a position to know the facts with reference to the issues involved. There are perhaps other circumstances found in the testimony more or less trifling when standing alone, but of a convincing nature when filling the niche into which they were fitted in the preparation of the entire case.

The rule governing this court in reviewing the findings of the chancellor upon questions of fact, is that they are not so conclusive upon us as is the verdict of a jury. If the evidence is such as to create a doubt in regard to the truth of the matter, the doubt will be resolved by this court in favor of the chancellor's judgment, but if the evidence preponderates against his finding so as to convince us of its incorrectness, it is not only our right but our duty to determine the case in the way authorized by the evidence, and which it clearly justifies. The latest statement of the rule is found in the case of James v. Golden, 172 Ky. 499, in this language:

"While it is the rule in this jurisdiction that we will not reverse the judgment of the chancellor on a mere matter of the credibility of the witnesses, or where, under the evidence as a whole, the truth of the matter involved is doubtful, we have, however, often held that though the chancellor's judgment is entitled to some weight, we will weigh and judge of the sufficiency of the evidence for ourselves, and where it is found to preponderate for one side or the other in such a way as to convince us that the chancellor erred, his judgment will be reversed. Farmer v. Hampton, 154 Ky. 83; Coomes Bros. v. Grigsby & Co., et al., 151 Ky. 394; Bullock v. Harrison, 145 Ky. 358; Northup's Trustees v. Summer's Trustees, 132 Ky. 156; Powell, et al. v. Union Grocery Co., 113 S. W. 912."

Many other cases might be cited, but there is no rule of appellate practice prevailing in this court more firmly fixed or universally understood. In the language of that opinion: "Our examination of the evidence in this case leads us to the conclusion that it does not support the judgment."

We are convinced that the plaintiff established her case on both of the propositions considered, and that the

judgment should be and is reversed with directions to cancel the deed which defendant obtained from Tip Farmer and the bond which the latter executed to Paris Farmer and transferred to the defendant, and to adjudge plaintiff to be the owner of the land, described in the petition, and for proceedings consistent herewith.