## Taber v. McGregor, et al.

(Decided October 25, 1921.)

### Appeal from Caldwell Circuit Court.

1. Executors and Administrators—Services Rendered Decedent—Contracts.—A contract between brother and sister, whereby the latter is to be paid by the former for services rendered by her while an inmate of his home as housekeeper and in nursing and caring for him in illness, will not be implied from the mere fact that the services were rendered, but to authorize a recovery for the services an express contract must be proved. In the absence of proof of such a contract, the relationship of the parties would be sufficient to raise the presumption that they lived together as a matter of mutual convenience, or that the services were prompted by sisterly affection and therefore gratuitously rendered.

2. Executors and Administrators—Services Rendered Decedent—Contracts.—Where, as in this action in equity brought by the appellant against the appellees, heirs at law of her deceased brother, who, without permitting any administration thereof, took and divided among themselves the latter's estate, it was made to appear from a preponderance of the evidence that a contract was made with her by the decedent whereby the latter, then a widower and in poor health, agreed in consideration of her undertaking to enter his service as housekeeper and nurse and care for him, that he would board her and infant son and pay her $25.00 per month; and that in pursuance of such contract she did enter his employ, remain with and faithfully perform for him the services required by its terms until his death, it was error for the circuit court to dismiss her petition and refuse her a recovery against the heirs at law of the decedent to the extent and value of the estate inherited by them from him, the amount due her at the contract price for the services rendered the decedent by her.

3. Appeal and Error—Finding of Chancellor.—While in an action in equity the chancellor's judgment is entitled to some weight, the Court of Appeals will weigh and judge of the sufficiency of the evidence for itself; and where it is found to preponderate for one side or the other in such a way as to convince it that the chancellor erred, his judgment will be reversed.

JOHN G. MILLER for appellant.

JOHN C. GATES for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The judgment of the Caldwell circuit court from which this appeal is being prosecuted, dismissed, on the final hearing, an action in equity brought therein by the appellant, Susie Taber, against the appellees, Marshall McGregor and others, children and only heirs at law of Loton McGregor, deceased, seeking to recover of them $650.00 for labor, nursing and other personal services, claimed to have been performed by her for their deceased father, beginning May 20, 1916, and, without intermission, ending July 21, 1918, thereby embracing two years and two months immediately preceding his death, which occurred on the latter date.

It was alleged in the petition that the services in question were rendered by the appellant under an express contract made by the deceased with her for their performance and upon his promise, therein and thereby made, to compensate her for such services by providing her and her infant son with a home and board and paying her $25.00 per month while she remained in his employ. The nature and extent of these services fully appear from the averments of the petition.

It also appears from other averments of that pleading, and is admitted by the appellees, that appellant was a sister of Loton McGregor; that the latter at the time of his death, July 21, 1918, was unmarried and had been a widower more than three years; that he was survived by three children who are his only heirs at law, viz.: the appellees, Marshall McGregor, Mahlon McGregor and Jean Littlefield, wife of David Littlefield, all being adults, and Marshall a resident of Vicksburg, Mississippi, Mahlon a resident of Louisville, Kentucky, but teaching school in Tennessee, and Jean and her husband residents of Hopkinsville, Kentucky. It further appears from the petition and is admitted by the appellees that Loton McGregor died intestate, domiciled in Caldwell county, this

state, owning and being seized of both real and personal estate, the realty consisting of an undivided interest of one-half in about seventy-five acres of land near Princeton, the county seat of Caldwell county, upon which he resided at the time of his death and the title to which had formerly been jointly held by himself and wife, the value of such half interest being approximately $1,000.00; the personal property consisting of household and kitchen furniture, farming implements, farm products, live stock and life insurance, worth, altogether, at least $1,500.00.

It does not appear that there was any appointment of an administrator for the decedent's estate, or that any administration of the personal estate was had or attempted, but it is alleged in the petition that both the real and personal estate were appropriated by the appellees, his three children, and by them divided and distributed among themselves as his heirs at law; and that by so doing, without first paying the appellant's debt against the decedent's estate, the debt became a lien on the property distributed in their possession, and they, under the laws of this state, became and are personally liable for her debt, each to the extent and value of the property so appropriated and received by him or her, and that the value of the share received by each heir exceeded in amount the appellant's debt.

The denials contained in the joint and several answer of the appellees put in issue all the averments of the petition respecting the contract claimed to have been made by the decedent with appellant for the labor and services sued for; likewise all its averments as to the character, performance and value of such services. In addition, it was alleged in the answer that such labor or service as was performed by the appellant for their father was voluntary and gratuitous because of their relationship as brother and sister, and that she was fully compensated therefor by being furnished by the brother with a home and board for herself and infant child and by her appropriation of the proceeds of certain products of the farm sold by her. All affirmative matter of the answer was controverted by reply.

The reversal of the judgment appealed from is asked by the appellant on the single ground that it is contrary to law and unsupported by the evidence. The law controlling this case is well settled in this jurisdiction. In numerous cases this court has declared that where the relationship of the parties was sufficient to raise the pre-

sumption that they lived together as a matter of mutual convenience, the law will not imply a promise to pay for such services as those for which the appellant is claiming compensation, but that in such case, to authorize a recovery for the services, an express contract must be proved. This rule has been declared applicable in the case of parent and child and brother and sister. Bolling v. Bolling's Admr., 146 Ky. 313; Bishop v. Newman, Exr., 168 Ky. 238; Price v. Price's Exr., 101 Ky. 28; Leahy v. Lillard, 26 R. 120; Marks, Admr. v. Boardman, 28 R. 978; Wallace v. Denny's Admr., 28 R. 455; Foley v. Dillon, etc., 32 R. 222; Reynolds, Admr. v. Reynolds, 92 Ky. 556; Conway, etc. v. Conway, etc., 130 Ky. 218. Likewise applicable in the case of uncle or aunt and nephew or niece. Weir v. Weir's Admr., 3 B. Mon. 645; Hays v. McConnell, 42 Ind. 285; Aloan v. Doll, 90 Mo. App. 87; Hurst v. Lane, 105 Ga. 506; Collor v. Patterson, 137 Ill. 403; Robinson v. McAfee, 59 Mich., 375; Defrance v. Austin, 9 Pa. 309; Hicks v. Barnes, 132 N. C. 146; Andrus v. Foster, 17 Vt. 556; Riley v. Riley, 38 W. Va. 283. In some of the cases decided by this court it was held that to authorize a recovery for such services where the relationship referred to existed, they must have been rendered under an express agreement that compensation would be made, or at the special instance or request of the beneficiary and with the expectation on the part of both parties that the services would be paid for. One of the cases so holding was that of Galloway v. Galloway's Admr., 24 R. 857, in which the plaintiff was a niece of the defendant's intestate, but among the more recent cases decided by the court, such as Bolling v. Bolling's Admr. and Bishop v. Newman's Exr., *supra,* the plaintiff in the first being a nephew and in the second a daughter of the beneficiary of the services rendered, it was held that, in the absence of satisfactory proof of an express contract to pay for the services rendered, the only presumption permissible was that the services were gratuitous; and that mere statements made to others by the beneficiary of the services before his death expressive of his gratitude to the performer of such services or of his wish or intention to pay for same, were not of themselves sufficient to establish an express contract to make compensation. In each of these cases, however, the necessity for proof of an express contract for the services and for the compensation claimed is made to rest, not upon the relationship of the parties alone, but upon that and the

further fact that they resided in the same house and lived as members of the same family.

Applying to the evidence found in this record the principles of law set forth by the authorites, *supra,* it only remains to determine whether it sustains the appellant's contention that it does not support the judgment of the chancellor.

It appears from the evidence and is nowhere contradicted that the wife of Loton McGregor died in the spring of 1915, leaving him, save for the presence of a small eleven year old girl the wife had given a home, alone and in poor health, the appellees, his children, having several years previously left the parental home and taken up their residence elsewhere, the daughter in Hopkinsville, one of the sons in Louisville and the other in a distant state, from which they returned only at rare intervals on brief visits to the parents. Being deprived by the death of his wife of a caretaker of his home and personal needs, McGregor wrote his aged mother and the mother of appellant, Mrs. Mary E. McGregor, then living with a married daughter at Sturgis, this state, asking her presence and assistance in the extremity that confronted him. The mother at once complied with his request, intending, however, to remain with him temporarily and until he could procure the services of a housekeeper. This he failed to do, in consequence of which she remained with him practically a year and until her health gave way under the labor and strain of conducting the housekeeping and other work required of her and caring for him in his ill health.

About May 1, 1916, the appellant, then a resident of Jacksonville, Illinois, where she was employed as nurse in a hospital at $50.00 per month, obtaining a leave of absence from the hospital authorities for that purpose, made with her little son, a visit to her mother, Mary E. McGregor, and brother, Loton McGregor, at the latter's home, intending to remain two or three weeks and then return to her hospital work in Illinois. Upon arriving at her brother's home and ascertaining the failing health of the mother from the strain of the work she had been and was then doing in caring for the home and personal needs of the son, appellant, desiring to relieve her of this burden, too heavy for one of her age and failing strength, took upon herself and performed, during the period allotted to her visit, the duties and services that had been and were being performed by the mother. The alleged contract of employment sued on by appellant was, as claimed,

not made until about May 20, 1916, the time at which she had contemplated ending her visit to her brother and mother and returning to her home and work in Illinois.

The evidence relied on to establish the alleged contract and its terms as agreed on by the parties is furnished by the deposition of the mother of the appellant and decedent, whose testimony substantially is to the effect that when appellant visited her and the decedent it was her purpose, as avowed upon her arrival at the latter's home and later repeated, to shortly thereafter and when her visit ended return to her home and hospital work in Illinois; that during her stay at her brother's home and down to about May 20, 1916, the appellant, because of the failing strength and disability of the witness, relieved her of the duties and work she had theretofore been performing for the decedent, by her own performance of same; and that on or about May 20, 1916, and when the appellant made known to the decedent her purpose to return to Illinois and resume her hospital work there, he insisted upon her staying with him, taking charge of his home, and serving him as their mother had done and as she (appellant) was then doing; that upon being then informed by appellant that she was receiving for her work at the hospital $50.00 per month and her board the decedent assured and promised her that if she would remain with and serve him he would pay her half that amount, or $25.00 per month and board her and her son. This offer, according to the further testimony of the witness, after some hesitation, was accepted by appellant, who thereby, in the language of the witness, "finally consented to stay" on those terms, remarking, in substance, at the time of expressing such acceptance that as her little son, Arden, whose life had been spent in a rooming house, liked the farm, he "would feel himself at home and have an outlet."

The testimony of this witness, whose relationship of mother to the appellant and decedent and grandmother to the appellees, evidently served to remove any motive for concealing or distorting the truth, and appears to have rendered entirely impartial her account of the transactions here involved, is uncontradicted and strongly corroborated by that of numerous witnesses and quite an array of circumstances following the making of the contract and attending the stay of the appellant at the home of the decedent. But, before discussing the corroborative evidence referred to, consideration should be given to the

character and extent of the services rendered the decedent by the appellant. The evidence is all to the effect, because uncontradicted, that when appellant's stay at the home of Loton McGregor began, the dwelling house, other buildings and fencing on the farm were badly out of repair. This was especially true of the dwelling house, and the work first performed by appellant, under her employment by her brother, was in overhauling and cleaning it from cellar to attic. Much of this work, such as the putting up of door and window screens and dipping standing water from the cellar, should have been performed by a man. During her entire two years and two months' stay at the home of her brother appellant did all the housework of the family, including the cooking, and, in addition, cultivated the garden, did the milking, attended to the poultry, feeding of the stock, which besides hogs included cows and horses, and even did much of the repairing of fences on the farm. Indeed, according to the testimony of two or more witnesses, she did such work on the farm as commonly falls to the lot of men alone. But, in addition to her performance of the arduous duties and labor already mentioned, appellant had, while remaining at his home, the onerous burden of caring for her brother, the decedent, who was practically a confirmed invalid from kidney and bladder troubles caused by his excessive use of intoxicants and periodic sprees of drunkenness. According to the evidence he was much from home buying and trading in stock and cattle and usually returned so sick from intoxication or the effects thereof as to put him abed and require for him the services of a physician; and in all such illnesses he was faithfully nursed and ministered to both day and night by the appellant, whose skill and experience as a nurse gave efficiency to her ministrations. In more than one instance she was compelled to relieve the decedent's bladder of its contents by the use of a catheter, the service being one rarely performed save by a surgeon. As many as six or eight witnesses, including the physician who attended the decedent in his many spells of illness, testified as to the nursing and other necessary care given him by appellant, and also as to the character and great value of the labor and services she rendered him as housekeeper and servant in the particulars set forth in the petition from May 20, 1916, until his death July 21, 1918, none of which evidence was attempted to be contradicted.

It is also patent from the evidence that the appellant was never paid for the services in question or any of them by the decedent or otherwise; and the allegation of appellees' answer that she was compensated therefor by the proceeds of products of the decedent's farm sold by her is wholly unsupported by any evidence introduced by them. Appellees' lack of personal knowledge regarding the sale by appellant of products of the farm is manifest, when it is considered that two of them visited their father not oftener than twice, and one of them only once, while appellant remained with him.

It appears, however, from the testimony of several witnesses, one of them the county judge of Caldwell county, that the decedent, many times and even down to the time of his death, acknowledged his indebtedness to appellant for the services she rendered him, and declared that she should be paid therefor. The mention we have made of the evidence does not include the testimony of the appellant, much of which is competent in rebuttal for the purpose of contradicting such statements as were attributed to her by the testimony of the appellees. It may well be questioned, however, whether any part of it, even that respecting her contract with the decedent, should be disregarded, as the exceptions filed to it by appellees were not passed on in the court below, which leaves to be indulged the presumption that the exceptions were waived.

It may well be said, however, that the right of appellant to recover in this case is established, independently of her own testimony, by that of Mary E. McGregor, a wholly disinterested witness and the only person other than the parties present when the contract for the services of appellant sued for was made with her by the decedent, which testimony with that of the several witnesses as to the declarations of the decedent corroborative of it and acknowledging his indebtedness to the appellant, sufficiently establishes that there was an express contract between them whereby he agreed to pay her for the services sued for, in addition to the board of herself and son, $25.00 per month. Appellant and the decedent were not members of the same family for their mutual convenience or benefit, but she became temporarily a member of his family as a servant for hire, and no presumption can arise that her services were gratuitously rendered.

In view of the evidence appearing in the record we think the case comes within the rule authorizing a recovery stated in Bolling, etc. v. Bolling's Admr. and Bishop v. Newman's Exr., and other cases, *supra*.

It it a well recognized rule that in an action in equity the chancellor's judgment is entitled to some weight, but the Court of Appeals will weigh and judge of the sufficiency of the evidence for itself, and where it is found to preponderate for one side or the other in such a way as to convince it that the chancellor erred, his judgment will be reversed. James v. Golden, 172 Ky. 499; Farmer v. Cornett, 174 Ky. 560; Farmer v. Hampton, 154 Ky. 83. We think it clear that the judgment appealed from is not supported by the evidence.

The question whether appellant is entitled to a lien on the property left by the decedent is not before us for decision. A sufficient description of it is not given in the petition and nothing alleged to authorize the adjudging of a lien. The appellant's recovery can only go against the appellees as heirs at law of Loton McGregor to the extent and value of the estate inherited by them from him.

For the reasons indicated the judgment is reversed for the entering of one that will conform to the opinion.