## McAllister, et al. y. Vaughn.

## McAllister, et al. v. Donahue.

(Decided October 20, 1925.)

### Appeals from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Appeal and Error—Chancellor's Findings on Conflicting Evidence Not Disturbed.—While Court of Appeals is not bound by chancellor's judgment in equitable actions, but will review all facts and circumstances and decide case according to preponderance of evidence, chancellor's findings will not be disturbed where evidence is conflicting and leaves mind in such doubt that it cannot be said with reasonable certainty that chancellor erred.

2. Master and Servant—Evidence Held to Support Judgment for Commissions.—Evidence, in actions against realtor for commissions due employees for listing, buying, and selling realty, held to support findings for plaintiff.

JAMES P. MILLER and EDWARDS, OGDEN & PEAK for appellant.

ALLEN P. DODD for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

These two appeals involving similar questions were heard together and will be considered in one opinion.

George H. McAllister is engaged in the real estate business under the name of George H. McAllister & Company in the city of Louisville. His method of doing business is to acquire options on real estate and then close the options and sell the property if he can find a purchaser at a higher price than that stated in the option. Appellees, Vaughn and Donahue, were each employed by McAllister to list, buy and sell real estate. Claiming that they were employed on both a salary and commission basis, and that McAllister had failed to pay them all the commissions due, they each brought suit to recover an alleged balance. McAllister defended on the ground that appellees were employed on a salary basis only and the salary of each had been fully paid. In the Donahue case he counterclaimed for $195.00, which he claims to have loaned Donahue and also for $350.00 which he paid for an automobile at Donahue's special instance and request. The chancellor sustained the contentions of Vaughn and Donahue and referred the cases to the mas-

ter commissioner for settlement. The commissioner reported a balance in favor of each, and the report was modified to some extent by exceptions. On final hearing judgment was rendered in favor of Vaughn for $2,852.36, with interest, and in favor of Donahue for $1,542.86, with interest.

On the hearing it developed that McAllister in the fall of 1920 ran in one of the papers the following advertisement:

> "Salesman: An ambitious salesman. Prefer young man raised in the country. Salary and commission. Excellent opportunity for energetic man capable of producing results. McAllister, 217 South Fifth street."

Vaughn deposed that he appeared in answer to this advertisement and was employed by McAllister & Company. Under his contract he was to receive $40.00 a month and 10% of the profits realized from his services in listing property, and 20% of the profits for his services in selling property, or 30% of the profits for the entire service. This contract continued until about December, when he left the employ of McAllister & Company temporarily. On his return the latter part of January of the year following he was again employed on a straight commission basis of 20% of the profits for listing and 40% of the profits for selling, or 60% of the profits for both listing and selling. He continued to work under this contract until March 4, 1921, when, due to some misunderstanding as to his share of the profits in a prior deal, he and McAllister made a different arrangement. Under the new arrangement McAllister agreed to pay him 20% of the profits for listing and 40% of the profits for selling and allow him a salary or drawing account of $100.00 a month, the salary or drawing account to be charged back against commissions. Donahue deposed that on April 15, 1920, he answered an advertisement and was employed by McAllister. He worked for about six weeks without pay in order to convince McAllister that he could do the work. The later part of June, 1920, McAllister called him into his office and told him he would give him a drawing account of $125.00 per month and 16 2/3% of the profits realized from listing property, and 33 1/3% of the profits realized from selling the property, or 50% of the profits realized from both listing and selling. Afterwards the drawing account was increased from $125.00

per month to $155.00 per month. In October, 1920, McAllister advanced Donahue $300.00 and charged it back against his commission account. McAllister also advanced him $350.00 to buy an automobile and $195.00 to buy certain furniture. Vaughn and Donahue corroborated each other as to the terms of their respective contracts, each claiming that he was present and heard the other's contract discussed by him and McAllister. Orville A. Gentry, who worked for McAllister at the same time as Donahue and Vaughn on a drawing account and commission basis, testified that McAllister told him on several occasions that Vaughn and Donahue were working on the same contract, that is, a drawing account and commission. J. R. Thompson, another salesman who was working for McAllister on a drawing account and commission basis, testified that McAllister told him that Vaughn was getting 60%. He also stated that McAllister told him that they were making from $300.00 to $500.00 per month. D. B. Franklin, who had been in McAllister's employ, testified that McAllister told him that Vaughn and Donahue were working on a drawing account and commission; that they were all earning big money and he wanted to put witness on a drawing account and commission, but he accepted a straight salary. Parker Williams swore that McAllister told him that the men in charge of that department had made from $500.00 to $2,000.00 a month and that if he would come in and give his whole soul to the work he could make just as much money as the other men. On the other hand, McAllister testified that Vaughn worked for him in the fall of 1920 on a salary and commission basis. The salary was $60.00 per month. Vaughn worked on this basis for a short time and then was off for a while. He returned the following March, when a new contract was made by which Vaughn was to receive a salary of $100.00 per month without any commission, but a bonus if the business justified it. He further testified that he did not agree to pay Donahue any commission. On the contrary, Donahue first worked for a salary of $125.00 a month and this was afterwards raised to $155.00 a month. He produced a number of checks payable to and endorsed by Vaughn and Donahue, which recited "For April salary," "For June salary," or "For salary to date." Miss Pfeffer, appellant's bookkeeper, testified that she did not know exactly what the contract was between Vaughn

and McAllister, but she knew from both of them that Vaughn was to work on a salary of $100.00 per month. She either wrote or caused the checks to be written and inserted therein, "For May salary," etc. She never heard anything about commissions until after they both ceased work. W. H. Ruff, another employe, testified that he knew the arrangement or contract under which Vaughn was working, and that Vaughn was to be paid a salary of $100.00 per month and no commission. He further stated that McAllister sometimes paid bonuses but would determine for himself whether or not such bonuses should be paid. Mrs. LaRue testified that she knew what Vaughn was receiving. On one occasion he came in looking very much pleased and stated that McAllister had raised his salary $50.00 a month.

While it is true that in equitable actions we are not bound by the chancellor's judgment, but will review all the facts and circumstances and decide the case according to the preponderance of the evidence, yet, where the evidence is conflicting and on consideration of the whole case the mind is left in such doubt that it can not be said with reasonable certainty that the chancellor erred, his finding will not be disturbed. Taber v. McGregor, et al., 192 Ky. 600, 234 S. W. 194; Jones v. Tarry, 187 Ky. 700, 220 S. W. 523. It is at once apparent that this case falls under the last mentioned rule. The plaintiffs testify one way and the defendant another. They are each supported by corroborating circumstances, and the evidence of other witnesses. At most, the mind is left in such doubt that it cannot be said with reasonable certainty that the chancellor erred.

The judgment in each case is affirmed.