## Deep v. Farmers' National Bank of Lebanon.

(Decided Feb. 28, 1933.)

J. WALTER HARDESTY, JAMES THOMAS and WILLIAM G. DEARING for appellant.

W. H. SPRAGENS and C. C. BOLDRICK for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

The Farmers' National Bank of Lebanon, Ky., instituted this action against Salem George and William Abraham Deep seeking recovery on a note for $2,-297.73 dated August 25, 1930, due six months after date, and bearing interest from maturity. The petiticn contained the necessary formal allegations authorizing a recovery in such cases, and no question is made as to its sufficiency.

George interposed no defense, but Deep filed answer consisting of four paragraphs, in the first of which he traversed the allegations of the petition and alleged that the note sued on was not his act and deed. In the second paragraph it is alleged that there was no consideration for the execution or delivery of the note. In the third paragraph it is alleged that, at the time the note was executed, Salem George was indebted to plaintiff bank in a sum aggregating about $2,200, evidenced by two notes in approximate sums of $7C0 and $1,500, without security, personal or otherwise; that the notes were past due and plaintiff requested George to obtain surety on the renewals; that he is foreign born, a Syrian, and can neither read nor write English, and these facts were known to the officers and employees of the bank; that he would not have agreed or consented to sign as surety on a note for $1,500 cr on a combination of the $700 and $1,500 notes; that he was informed and believed that the note which he was to and did sign was in the amount of $700; and that by mutual mistake of parties he was caused to and did sign the note sued on, believing he was signing the note for $700. In the fourth paragraph as amended, after demurrer had been sustained to that part of the original answer, he reiterated most of the allegations contained in the third paragraph, and further alleged that the officers, agents, and employees of the bank, bv false and fraudulent representations, and by inequitable conduct, concealed from him the amount of the note, and induced him to sign the note for $2,297.73, when he, by mistake, believed he was signing a note in the sum of $700; that such representations were material, and he relied upon them, and that but for such conduct upon the part of the officers and employees of the bank he would not have signed the notes sued on.

A demurrer to this paragraph as amended was overruled, and plaintiff, by a reply controverting the

affirmative allegations of the answer, completed the issues.

On motion of defendant, and over the objections of plaintiff, the case was transferred to equity. The court sustained a motion of defendant that the issues of fact raised by pleading be submitted to a jury, but thereafter defendant was permitted to withdraw his motion and by agreement of parties the evidence was ''heard orally by the judge in the same manner as testimony introduced in ordinary actions.''

On final hearing, the chancellor adjudged that the plaintiff was entitled to the relief sought. Thereupon defendant moved the court to make separation of its finding of law and of fact, which motion was overruled. Deep is appealing from the judgment, and the grounds argued for reversal, in substance, are: (1) That the court erred in fixing the burden of proof on appellant; (2) that appellee constituted Salem George its agent for the purpose of obtaining a surety on the note, and is therefore bound by his representation; (3) that evidence of prior collateral transactions between appellant and other persons was incompetent and prejudicial to him; (4) that there was no meeting of minds in the transaction, and the court should have rescinded the contract; (5) that the contract should be reformed to carry out the true intention of the parties; (6) that it was the duty of the court to separate its finding of law and fact, and failure to do so was prejudicial error.

At the outset it may be said that, regardless of the nature of this action, it was on appellant's motion transferred to the equity docket. He elected to try it in equity; therefore it should and will, on appeal, be considered on its merits as an equity action.

In ordinary actions, the question of determining who has the burden of proof may be and often is of vital importance, since it may be the controlling factor in determining the jury's verdict, which under a rule of universal application will not be disturbed on appeal, unless it is flagrantly against the evidence; but neither this rule nor the rule that the court's finding of fact in an ordinary action will be treated as the verdict of a properly instructed jury applies in an equity case. On appeal of an equitable action, deference and weight

will be given to the chancellor's finding; however, the appellate court will weigh and determine the facts and the sufficiency of the evidence for itself, and will not hesitate to reverse the judgment. when from a consideration of all the facts in evidence such action is warranted. Taber v. McGregor, 192 Ky. 600, 234 S. W. 194; People's Savings Bank v. Wright, 183 Ky. 362, 209 S. W. 342; Johnson v. Williams, 187 Ky. 764, 220 S. W. 1057.

Viewing the answer of appellant as a whole, we are not convinced that the court improperly adjudged the burden to be upon him; however, if any error was committed in this respect, it was merely technical, and it is manifest that it did not operate to affect the result in the court below, nor will it in any way influence the decision of this appeal.

Argument that, because appellee requested Salem George to get appellant to sign his note, it thereby constituted him its agent, and was bound by his representation, is not supported by any cases from this jurisdiction, and we do not regard any of the cases cited from other jurisdictions as supporting such contention. The cases of Newlin v. Beard, 6 W. Va. 110, and Haskit v. Elliott, 58 Ind. 493, cited and relied on by appellant's counsel, merely indicate that, where a debtor places a note, bond, or like instrument in the hands of the creditor and requests him to secure the signature of a certain person thereon, the creditor is thereby made agent for the purpose of obtaining the signature. Applied to the facts in this case, it is at once apparent that those cases have no application. While it is true, as contended by counsel, that one may designate an agent to perform a single act, there is nothing in this record to warrant a conclusion that George was made the special, limited, or general agent of the bank to procure the signature of appellant on the note.

It is further argued that the court committed prejudicial and reversible error in admitting evidence as to a prior transaction between appellant and an employee of appellee bank in which appellant claimed that the amount inserted in a check which he had given was for more than he understood and intended that it should be. It is manifest that this evidence was incompetent, and it might have been very prejudicial in a trial before

a jury. There was considerable evidence as to self-serving statements made by appellant which was also incompetent. We would not be authorized to reverse the case because of the admission of this evidence, but will, as no doubt the chancellor did, eliminate the incompetent evidence from consideration and determine the rights of the parties on that which is competent.

The fourth and fifth grounds argued by counsel for appellant may be treated together, since they must both be determined by the facts and circumstances developed by proof.

Appellant testified that George came to his place of business and requested him to sign a $700 note, but he was busy at the time, and a few minutes later, and after George had left for his home, he went to the bank where the cashier had him to touch the pen and sign the note by mark; that the note was not read to him, and nothing was said about the amount, and he thought he was signing a note for $700. George testified that the bank insisted that he secure the notes in some way, and suggested that he get personal security, but he protested that he was adverse to asking others to sign as surety for him; that the bankers suggested that he get Deep and Eli Owen, who was a Syrian, to sign his note; that it was suggested that the notes be split up and that appellant sign the $700 and Owen the $1,500 note; that he did ask Deep to sign a $700 note and also asked Owen to sign a note for $1,500. Owen refused to sign a note for $1,500, but agreed to and did sign a note for $400. There is other evidence tending to corroborate the evidence of Deep, some of which, however, was incompetent.

One witness testified that he went with Deep to the bank and saw him go up to the cashier's window and sign the note; that he saw no person in the bank other than appellant and the cashier. Another witness testified that he heard a conversation between appellant and the cashier of the bank some months after the note had been executed in which appellant was charging that he had been misled and that the cashier had not read the note to him; that the cashier responded in effect that he was under no obligations to read the note to appellant.

The cashier of the bank testified that appellant knew and understood the amount of the note he was

signing, and that, immediately before he signed it, he read the date and the amount but no other part of the note to him; that George and appellant came into the bank together and signed the notes, each signing by mark. One signature was witnessed by the cashier and the other by the assistant cashier. The assistant cashier, who witnessed the signature of Salem George to the note, testified that he could not recall whether Deep was present at the time, but two other employees in the bank testified that both George and Deep were present when the note was signed. The employees of the bank testified that Salem George owed two notes to the bank, one for approximately $2,200 and the other for $1,500; that nothing was said about splitting up the $2,200 note into notes of $1,500 and $700 respectively; that Eli Owen did refuse to sign the $1,500 note, so it was split, and he signed a note for $400, and the remainder with interest added was secured by a second mortgage on a farm owned by George in Casey county.

While the evidence shows that neither George nor Deep can read or write and that they speak broken English, it is apparent that they are endowed with the qualities of business acumen and thrift common to sons of Syria. It appears that George was at one time worth $60,000, and owned valuable farm lands, but, due to the general depression and shrinkage in values, he is in straightened circumstances, if not in fact insolvent.

Counsel for appellant earnestly argue that the evidence shows that George was insolvent, and that the bank, in order to avoid loss, took undue advantage of appellant's inability to read and write and the confidence he reposed in the officials of the bank to secure his signature to the $2,200 note by leading him to believe he was signing a note for only $700. They invoke the rule recognized in the Board of Regents of Murray Normal School v. Cole, 209 Ky. 761, 273 S. W. 508, that, where there is a material mistake on the part of one party to a contract, the court may rescind and cancel the agreement where it can be done without injustice to the other party. The evidence clearly preponderates to show that the officers and employees of the bank did nothing to mislead appellant or to conceal from him the fact that he was signing the note sued on, and, furthermore, it cannot be said that a rescission, cancellation, or reformation could be had without doing injustice to appellee.

Argument that it was the duty of the court to separate its finding of fact and law upon request of appellant and that refusal to do so was prejudicial error is without merit. In equitable actions or in ordinary actions transferred to and tried in equity, it is unnecessary for the chancellor to state separately the law and the facts. See Hartford Insurance Co. v. Haas, 87 Ky. 531, 9 S. W. 720, 10 Ky. Law Rep. 573, 2 L. R. A. 64, and other cases cited under section 332 of the Civil Code of Practice.

According to appellant's own evidence, he went to the bank and signed the note without asking the cashier or the friend who accompanied him to the bank to read the note or tell him the amount of it. He does not claim that the cashier or any other employee of the bank made any misrepresentations as to the amount of the note or that they did anything whatsoever to induce him to sign it without having it read and its contents explained to him. In such circumstances he is not entitled to the relief sought. Mayfield Land Company v. Via, 189 Ky. 563, 225 S. W. 366.

As already indicated, the chancellor's finding is in accord with the preponderating weight of competent evidence, and in such circumstances, or if the evidence does nothing more than to create a doubt as to the correctness of the chancellor's finding, it should not be disturbed on appeal. Jones v. Ky. Glycerine Co., 226 Ky. 676, 11 S. W. (2d) 713; Main v. Sevier, 221 Ky. 828, 299 S. W. 972; Braisden v. Gibson, 208 Ky. 341, 270 S. W. 830.

Judgment affirmed.