# Hager v. Hager.

March 22, 1949.

William A. Young for appellant.

Charles L. Hobson and Phillip Ardery for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SIMS—Reversing.

The question for determination on this appeal is which of the divorced parents is entitled to the custody of their son, William Farrell Hager, now practically eight years of age. The chancellor decided in favor of the father, and the mother, who has remarried, appeals. This is a fact case, hence it is necessary to review the evidence. In doing so, we will not attempt to go into detail but will content ourselves in giving the substance of the evidence.

The parents were married in Frankfort on July

15, 1940, at which time the wife was 16 and the husband 28 years of age. He was in the army and married while home on a 10 day furlough. The honeymoon was of a week's duration when the husband had to return to duty and left his wife in the home of his parents, who reside in a three-room house in Benson Valley, a community near Frankfort. The wife had spent several years in an orphans' home and had been out of that institution only a year when she first married, hence she was not only immature in years but was greatly lacking in experience and the ways of the world when her newly-wedded husband left her to return to his post of duty.

She continued to live with her husband's parents until in February following her marriage in July, when her father-in-law asked her to leave because she was pregnant, as she says, but he states it was because she was running around with men. She then went to the home of her mother and stepfather, where her child, the subject of this controversy, was born on May 14, 1941.

The father came home on a furlough at the birth of the baby and the mother testified that he immediately disclaimed the paternity of the child. This is contradicted by the father, who says he has never denied the paternity of the baby, but now and always has claimed it to be his son. An allowance of $50 per month was paid by the United States Government for the support of the mother and child while the husband was in military service.

Hager was discharged from the army on October 5, 1945, and three days later instituted a divorce action on the ground of cruel and inhuman treatment by his wife. The petition contained no charges against the mother as being a person unfit to have the custody of the child, but in that pleading the father stated he was the proper one to rear the child and he asked custody of him. The mother entered her appearance to the action but did not ask for the custody of the baby, who was then three and a half years of age. She now states that she was then unemployed and without funds and was unable to care for the child.

In the divorce action Hager testified his wife during his absence in the army was ''getting intoxicated, being locked up in jails and running around with men.'' This was hearsay on his part. Mrs. Radie Thurman, a

great-aunt of Charles Downey, appellant's present husband, in testifying in the divorce case stated that appellant came to her house drunk late at night to get the baby, bringing Charles Downey with her. In testifying in the present action over the custody of the child, appellant denied the charges of Hager, and also denied that she was drunk on the night she went to Mrs. Thurman's home for her baby.

After due notice appellant moved to redocket the divorce action and on Dec. 21, 1946, filed her answer averring that while she was unable to care for the child when the judgment of divorce was entered, she had since remarried and is living in a nice home on a farm in Shelby County with her present husband, Charles Downey; that he and she are able to properly care for the child and she asked to be given the custody of William. Considerable proof was taken by depositions as to whether the father or mother of the child is the fit and proper person to care for William and which of them can furnish the little fellow with the most suitable home. As might be expected, much of this proof is highly conflicting.

The father has had the child in the home of his parents where his mother has cared for William since the judgment in the divorce suit awarded the father the custody of him. This is an humble and crowded home. While appellant and her witnesses make a vigorous attack on the Hager home and the character of its inmates, their evidence is not convincing. However, the other side of the picture is that appellant and her present husband live in a more commodious and better furnished home on a large farm near Bagdad, in Shelby County, and her present husband earns between $2000 and $3000 per year as a tenant farmer. The evidence shows the Downey home to be a very wholesome one for the child.

The weakness in Hager's case is that he failed to show his occupation and his earnings, nor did he show the occupation and earnings of his father. The frailty in the mother's case is that she married her present husband on the very day she was divorced by Hager. This proves conclusively that she was in love with Downey while the wife of Hager and adds strength to the damag-

ing testimony of Charles Merchant, who is divorced from appellant's sister. Merchant testified that while Hager was in the army he saw appellant and Downey ''lying together on the divan'' one night in her mother's home. This was denied by appellant.

The chief concern of courts in this character of case is the welfare of the child. Where a child of tender years is involved courts ordinarily will not deprive a mother of its custody, unless it clearly appears that she is not a fit person to rear the child. In three recent cases we have held the acts of indiscretion by the wife with a man she soon married after she was divorced did not brand her as a person unfit to have the custody of a young child, where there was no evidence of promiscuity. Ruttencutter v. Ruttencutter, 293 Ky. 556, 169 S.W.2d 604; Clark v. Clark, 298 Ky. 18, 181 S.W.2d 397; Price v. Price, 306 Ky. 214, 206 S. W. 2d 924. It is difficult for society in general, and men in particular, to realize that a woman can reform and that one misstep on her part should not brand her as morally unfit to rear her child, and that nothing is left to her but the downward path to perdition. The male of the species seems to think that to him, and him alone, is reserved the right to sin, followed by forgiveness and restoration to his place in our social system. Such is not, and should not be, the moral code of a cultured people.

This mother must not be branded forever as being unfit to rear this child because when young and inexperienced she made one false step, accompanied by some minor indiscretions, while her husband was in the army. Since her second marriage she has put behind her the vagaries of youth and is living a wholesome, upright and honest life. For the benefit of the child and to encourage the mother in a life of rectitude, we will grant her the custody of her son during the three summer months when he is not in school, and will leave the child with his father during the nine months when in school. While the boy is with the mother, the father shall have the right of visiting his son at reasonable times and places, and this same right is given to the mother while the child is in the custody of the father.

Appellee insists that we should follow the chancellor as the evidence is conflicting. While we do give much

weight to the finding of the chancellor on a question of fact, especially where the evidence is conflicting, yet in equity cases this court will weigh the evidence for itself and reverse the judgment when convinced that the chancellor has erred. Cassinelli v. Stacy, 238 Ky. 827, 38 S.W.-2d 980; Deep v. Farmers' Nat. Bank of Lebanon, 247 Ky. 801, 57 S. W. 2d 1002; Hodges v. Daviess County, 285 Ky. 508, 148 S.W.2d 697. Appellee further calls to our attention that in the cases cited in the second paragraph above the findings of the chancellor were affirmed. So they were, but that does not mean that we would have affirmed the judgments had the mothers been found unfit to have the custody of their children. In the instant case we are convinced, after considering all the proof in the light of the general welfare of this young boy and the two homes in which he is wanted, the chancellor erred when he deprived the mother of all custody of the child and vested it solely in the father.

Motion was made by counsel for appellee to strike from the record a letter addressed to the chancellor by a Child Welfare Worker of Franklin County and her accompanying report relative to the conditions she found prevailing in the home of Hager's parents, as well as the conditions prevailing in the home of Mrs. Downey and her husband. This motion was passed to merits. It is evident that attorney for appellant and one of the attorneys for appellee had a tacit agreement that the welfare worker's report would be submitted to the chancellor, or at least the appellant's attorney so understood. Had there been no such understanding between counsel, the chancellor would not have considered the letter and the report of the welfare worker. However that may be, this report has not the importance that counsel seem to attribute to it. As we have reached a decision of the case without resorting to the report, we deem it unnecessary to determine whether or not it was improperly made a part of the record and should be stricken.

For the reasons given, the judgment is reversed with directions that one be entered in conformity with this opinion.