## Hodges v. Daviess County et al.

Feb. 25, 1941.

Barnes, Smith & Monarch and W. W. Kirtley for appellant.

Dan M. Griffith, Jr., for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

J. E. Thompson was sheriff of Daviess county from about January 1, 1934, until his death in April, 1936, and he was succeeded as sheriff by his widow, Mrs. Florence Thompson, who by appointment and subsequent election filled the remainder of the term.

In February, 1935, while J. E. Thompson, deceased, was sheriff, he appointed appellant, E. D. Hodges, deputy sheriff of Daviess county and his sole duties were that of seizing, impounding, keeping and killing dogs, pursuant to the provisions of Section 68b-19 et seq. of the Kentucky Statutes. During the incumbency of J. E. Thompson as sheriff, appellant filed claims with the fiscal court of Daviess county at various intervals for his duties performed as deputy sheriff and was paid $1 each for the dogs that he had handled at least in some manner, but whether the claims were for all dogs seized, impounded and killed, or killed only, or seized and impounded only, furnishes the dispute out of which this

case arises. After the death of J. E. Thompson and after Mrs. Florence Thompson was appointed and qualified as sheriff, appellant continued to serve as her deputy as "dog catcher" until September 16, 1936, at which time his services were terminated as such deputy sheriff. Also, after appellant was appointed deputy sheriff by Mrs. Florence Thompson and during his incumbency as such, he filed various claims with the fiscal court for $1 each for dogs seized, etc., as he had previously done while serving as such deputy sheriff during the incumbency of J. E. Thompson, and after his services were terminated at the time stated above he filed with the fiscal court his claim in September, 1936, and made settlement with the court on the same basis of $1 each, apparently for all dogs seized, impounded and killed by him.

In December, 1937, appellant brought this action to recover of Daviess county the sum of $2,495 as balance alleged to be due him for his services rendered during his incumbency as deputy sheriff under both J. E. Thompson and Mrs. Florence Thompson. He alleged that during his incumbency as deputy sheriff he had seized, impounded and killed 2,495 dogs in Daviess county as authorized by and pursuant to Section 68b-19, Kentucky Statutes, and further alleged that he had been paid $1 each for killing said number of dogs, or the sum of $2,495, but that under the statute he was entitled to an additional fee of $1 for each dog seized and impounded by him, or an aggregate of $2,495 therefor.

In appellant's original petition he based his action solely upon the theory that he was entitled under the statute to $1 each for all dogs seized, impounded and kept by him and a like sum for each dog killed by him, the fees allowed the sheriff of the county. The court sustained a demurrer to the petition upon the ground that the fee or compensation set out in the statute was allowed to the sheriff of the county but had no application to a deputy sheriff. Appellant then amended his petition and alleged an oral contract or understanding with both J. E. Thompson, deceased, and his successor, Mrs. Florence Thompson, that he was to receive as compensation the entire statutory fee, or all that the law allowed the sheriff of the county for such services. By subsequent pleadings the issues were made, and by agreement of parties a jury was waived and the evi-

dence taken in open court and the court found for appellant the sum sued for. A motion and grounds for a new trial were filed and upon consideration the court sustained the same and granted appellee, county, a new trial, apparently upon the ground that since appellant finally based his action on a personal contract with the sheriffs it was proper and necessary that Mrs. Florence Thompson be made a party to the action personally and also as administratrix of the estate of J. E. Thompson, deceased. Appellant then amended his petition, making Mrs. Florence Thompson a party defendant personally, as well as in her official capacity as sheriff, and also as administratrix of the estate of J. E. Thompson. Various other pleadings and motion were made and issue finally joined upon the alleged contracts and a jury was again waived and it was agreed that the evidence taken in the former trial would be used and considered as evidence in the last trial, together with such other evidence as might be offered. Upon consideration of the case the court entered a separate finding of facts and conclusions of law. The court found as a matter of fact that the proof shows that appellant understood his contract to be for $1 for each dog seized, impounded and killed, rather than $2 as claimed by appellant. The court found as a matter of law that the statute allowed the sheriff of the county $1 for impounding a dog and an additional $1 for killing a dog, or a total of $2 for each dog impounded and killed, but further found that the statutory fee was allowed to the sheriff, rather than a deputy sheriff and, as the sheriff may employ a "dog catcher" deputy in any way he sees proper, upon a salary basis, a commission basis or so much per dog impounded and killed, and the sheriff was authorized to employ the plaintiff and pay him such compensation as might be agreed upon between them. The court entered judgment in accordance with his findings indicated above and dismissed plaintiff's petition. Plaintiff has appealed.

Two alleged grounds for reversal are relied on, (1) that a public official is entitled to all the fees or salary prescribed by law and a contract or agreement to accept a less amount is unenforceable; (2) that if it be determined that an agreement by plaintiff to perform the duties as deputy sheriff for less than the statutory fee is binding, the preponderance of the evidence

shows that plaintiff had a contract or understanding with the sheriffs as his employers that he was to receive all the fees allowed by the statute to the sheriff for seizing, impounding and killing dogs.

It seems to be the settled rule that an officer elected or appointed for a term and whose salary or fees are fixed by law cannot be required to accept a less amount, even by contract or agreement. However, it is equally well settled that this rule is not applicable to deputy officers or one who holds office at the pleasure of the appointing power and who may be removed at anytime. Moody v. Duerson, 280 Ky. 527, 133 S. W. (2d) 712; Buechele v. Petty et al., 265 Ky. 321, 96 S. W. (2d) 1010. Without further elaboration it is sufficient to say that the case supra, and cases cited therein, are conclusive that plaintiff is not, as a matter of law, entitled to all the statutory fees allowed to the sheriff of the county for his services performed in the premises in question. It follows, therefore, that plaintiff and the sheriff J. E. Thompson, and his successor, Mrs. Thompson, had the right by agreement to fix plaintiff's compensation or fees for his services at any sum agreed on between them. This brings us to the question of evidence relating to the contract between the parties.

On the first trial of the case the plaintiff did not testify concerning any contract or understanding he had with the deceased sheriff, J. E. Thompson, but he stated that when he was appointed deputy sheriff by Mrs. Thompson he had an understanding with her that he would receive the same fees or compensation for his services that he received while he was serving under J. E. Thompson. However, on cross-examination on the second trial of the case, plaintiff was asked and answered as follows:

"Q. At the time you presented those claims for killing those dogs did you present any claim for impounding and feeding those dogs? A. No, sir.

"Q. Why didn't you? A. Mr. Thompson told me when I went to work for him to leave that other $1.00 off. He says 'We will not put that other $1.00 in now. They haven't been in the habit of paying it and I know they are going to raise something when I do it,' and he said 'Wait until the last of the year

and we will look up your record and I will O. K. it for the other $1.00.'

"Q. Did you tell the Fiscal Court you were going to do that? A. No, sir.

"Q. Did you tell Judge James Wilson (County Judge) that is what you were going to do? A. No, sir.

"Q. Nobody knew this but you and Everett (J. E.) Thompson, is that right? A. I don't recall. * * *

"Q. And at the end of the third year you were to present the claim for impounding those dogs? A. He didn't say the end. He said the last year.

"Q. He meat his last year in office? A. Yes, sir; he said 'We will look up how many you got and I will O. K. your bill and have them to pay it.' " (Our parenthesis.)

It will be noticed that plaintiff first stated that Mr. Thompson told him when he went to work to leave "that other $1.00 off" and to wait until the last of the year to present the other $1.00, but he later stated that Mr. Thompson said to wait until the *last year* of his term of office to present the claim. It appears that the County Judge nor any member of the fiscal court knew about this secret arrangement between plaintiff and Mr. Thompson and they, members of the fiscal court, were led to believe that the claims presented and paid were all that was intended and treated it accordingly.

It is thus seen by plaintiff's conduct in presenting to the fiscal court what he now terms a partial claim, but in fact under the guise and form of a total or full claim, he thereby represented to the fiscal court that the claim presented was all the fees or compensation that he was charging or expecting to be paid for all services rendered. Such claims as are here involved are payable primarily out of the live stock fund but it is shown in this instance that the live stock fund was practically depleted and, therefore, would have to be paid out of the county's general fund budget and, since plaintiff had led the fiscal court or the county budgeting commission to believe that he had been paid in full for his services, no doubt this claim was not taken into consideration in making the county's general fund budget and the result

would be a deficit or other upset in the county's financial affairs.

In addition to plaintiff's testimony that he had the contract understanding referred to with J. E. Thompson and Mrs. Florence Thompson, two or three other witnesses gave like testimony. Jeff Hodges, a son of plaintiff, testified in substance that J. E. Thompson told him that plaintiff was to receive all the fees or compensation fixed by the statute. It is suggested in brief of counsel for appellee that the son's testimony should be scrutinized very closely because of relationship. While it is true that a witness should not be branded as a falsifier because he is testifying for a member of his family, yet it must be recognized that, as a rule, courts and jurors are not inclined to give the same credit and weight to the testimony of ''family'' witnesses as might be given to that of strangers or disinterested persons. However, about two other witnesses gave testimony similar to that of Jeff Hodges.

Mrs. Florence Thompson testified positively that it was understood between her and plaintiff when he entered upon his duties as deputy sheriff under her, that he was to receive only $1 for each dog seized, impounded and killed, and that that was the same contract that plaintiff had with J. E. Thompson. When plaintiff made his final settlement with Mrs. Thompson in September, 1936, after his services as such deputy sheriff had been terminated, he accepted a check signed by the treasurer of Daviess county for the sum of $385 ''for full settlement dog claim.'' This is in accord with all previous intermediate settlements and claims for his services rendered throughout the tenure of his office. It is also shown that there was some controversy between Mrs. Thompson and plaintiff growing out of his conduct or method of collecting dog tag fees. It appears that a number of owners of dogs had paid to plaintiff the fee for dog tags with the understanding that he would purchase the tags for them but which he failed to do. He made a settlement with Mrs. Thompson and deposited with her $50 to take care of the situation mentioned above, and after she had made refunds to various people from whom plaintiff had collected money for dog tags, she paid the balance over to plaintiff. This preceded the final settlement referred to above when plaintiff accepted the check for $385 in full settlement of dog

claims. At the time the final settlement was made, plaintiff was represented by counsel who prepared or assisted in preparing the settlement. The same counsel testified for plaintiff in rebuttal and said that he did not know why he put in the settlement, that it was in full of all claims. He was asked by the court:

"But you understood at the time that that claim was settled for in full or you could not have put it in that contract for your client? A. What he had talked to me about was they wasn't wanting to pay him."

It is thus seen that there was a dispute or controversy between plaintiff and the sheriff, or fiscal court, about plaintiff's claim for which they later settled for $385 as "claim in full."

In Alcorn v. Arthur et al., 230 Ky. 509, 20 S. W. (2d) 276, it is held that when one accepts checks or payment "for account in full" in settlement of a disputed claim, there was complete accord and satisfaction. It appears, therefore, that the check for $385 accepted by plaintiff constituted full satisfaction for all claims.

Considering only the oral testimony of witnesses, plaintiff has the larger number on his side, but in weighing the evidence, the records and plaintiff's conduct must be taken into consideration which perhaps speaks louder than oral statements of witnesses. It is the known rule that in equity cases this court will weigh and judge the evidence for itself and if it finds that the judgment of the Chancellor is contrary to the weight and preponderance of the evidence it will reverse the judgment. However, it must not be overlooked that the case under consideration is primarily an ordinary action and a jury waived by agreement of the parties, and the trial judge acted in the capacity of a jury as a fact finder, and his finding of fact is entitled to the same weight and credit as that of a properly instructed jury. Had this case been tried by a jury and decided in favor of defendant, as did the trial court, it certainly could not be said that the verdict would have been so palpably against the weight of the evidence as to warrant reversal. Furthermore, if it be conceded that the preponderance of the evidence tended to show that plaintiff had a contract or understanding with J. E. Thompson and Mrs. Florence Thompson that he claims he had, yet

it is our view that plaintiff's conduct as disclosed, not only by the record, but by his own evidence, is sufficient to sustain appellee's plea of estoppel.

From what has been said, it follows that the judgment must be and is affirmed.