## American Life & Acc. Ins. Co. et al. v. Arnett.

December 13, 1946.
Rehearing denied May 16, 1947.

Gilbert Burnett, Judge.

Smith & Leary for appellants.
Allen, McElwain, Dinning & Clark and L. H. Hilton for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Reversing.

Appellee and plaintiff below, Lena E. Arnett, brought this action against appellants and defendants below, American Life & Accident Insurance Company of Kentucky (hereinafter referred to as the Company) and John M. McTeer, Sr., to recover the value of a security, known in the record as the Goldschmidt note and mortgage, including certain sums defendants had collected thereon, alleging that defendants had fraudulently obtained the security from her. The chancellor gave the relief asked and rendered judgment against defendants in sums aggregating $16,280.25, which with the interest allowed amounts to about $20,000.

Defendants in their briefs argued several grounds for reversal, one of which is that plaintiff did not have title to the note (which was duly pleaded), therefore she cannot maintain this action. As we agree with them that Mrs. Arnett was not the owner of the note, it will be unnecessary to consider or discuss the other points raised.

This is primarily a fact case with a large record and more than 350 pages of briefs. The testimony is highly conflicting and it is evident that if we go into detail in analysing it, the opinion will be almost as voluminous as the excellent briefs filed by learned counsel. We think that the exhibits, which were made before the controversy arose, throw more light on the issue than does the testimony of many of the witnesses (who in some instances are highly interested and greatly biased), therefore we will rest our decision largely on the exhibits, making such scant reference to the testimony as may be deemed necessary.

It may be helpful to give a brief background of the principal actors on this stage. Carey G. Arnett (often referred to as C. G. Arnett) is the husband of plaintiff, residing with her on a farm near Halcyondale, Georgia. He was President of the Intersouthern Life Insurance Company from 1926 to 1932, during which time the Arnetts resided in Louisville. John M. McTeer Sr., also was an insurance man and a close friend of the Arnetts. Dinwiddie Lampton is President of the appellant Company and retained McTeer as a special employee of it at a salary of $125 a week. Lampton was in need of first class securities for the investment portfolio of his Com-

pany and McTeer's duties were to assist him in securing them, as well as to look after the rentals of the Company's office building in Louisville. Eli H. Brown, Jr., was a Louisville lawyer and a friend of McTeer until they disagreed on a fee for Brown's services to Arnett in clearing title to the Goldschmidt security involved in this action.

On Nov. 5, 1923, Albert Goldschmidt executed a note to the Ohio Joint Stock Land Bank for $14,500, payable in semi-annual installments of approximately $500 on June 1, and Dec. 1, of each year through 1956, which was secured by a mortgage on his farm of 437 acres located in Decatur County, Indiana. Goldschmidt subsequently sold the farm to Theodore Wanstrath, who assumed the mortgage and who met the installments as they fell due.

The bank sold this security to the Federal Union Life Insurance Company (hereinafter referred to as Federal) and when the latter failed in 1931, it was transferred to John Blue by a duly recorded assignment. It appears that Blue executed assignments in blank of the Goldschmidt note and mortgage, as well as of a Holcroft note and mortgage, which latter is not involved in this litigation but is often mentioned in the record. Both securities were purchased by Alfred M. Best & Co., who in March 1932, delivered to Carey G. Arnett the two blank assignments executed by Blue as a secret commission for Arnett's help in the disposition of certain stock in the Intersouthern. There appears to have been some mystery connected with this Goldschmidt security and Arnett never filled in the blank in the assignment or put it to record.

In August 1936, Arnett, McTeer and Lampton met in a hotel room in St. Louis where an attempt was made to interest Lampton in a real estate development known as the Osage Country Club. Lampton was cold to this project but did become interested in purchasing the Goldschmidt security to put in the investment portfolio of his Company. There is much conflict in the evidence as to what transpired in St. Louis. But we are convinced that Arnett represented to Lampton he was transferring the Goldschmidt note to McTeer and that Lampton agreed to purchase it if an inspection of the property showed it was amply secured (which a subsequent in-

spection did) and if a claim being asserted to the security by the Ohio Insurance Department representing the defunct Federal could be cleared. Lampton, acting for his Company, loaned McTeer $3,000 secured by the Goldschmidt note, pending the clearing of the title of it. But out of this $3,000 McTeer paid the Company $1,600 he owed it.

McTeer advised Arnett to employ Brown to help him clear the title and it was agreed Arnett was to bear Brown's expenses and pay him a fee of $1,000 contingent upon his success. Both Arnett and his wife testified that he had transferred this Goldschmidt security to her in April 1932, and that in employing Brown, as well as all other actions taken by Arnett, he was acting as agent for Mrs. Arnett. Brown corroborated the Arnetts.

Two checks were given by Arnett, one for $200 and another for $150, to cover Brown's and McTeer's expenses. Arnett testified these checks were drawn on his wife's bank account with her authority, but the cancelled checks, which were filed as exhibits, show they were not drawn on Mrs. Arnett's account and were signed "C. G. Arnett." After conferences with attorneys representing the Ohio Insurance Department, to whom Brown represented that McTeer owned the Goldschmidt security, and after the preparation of affidavits and other legal papers in McTeer's name, Brown was successful in obtaining a release of the Federal's claim and cleared the title to the Goldschmidt note and mortgage. But it is worthy of much consideration that Brown did not clear the title in the name of Mrs. Arnett, whom he testified he was representing, but in the name of McTeer, who had written his own name in the assignment Blue had executed in blank, after which McTeer assigned the Goldschmidt note and mortgage to the Company. Brown on Sept. 24, 1937, mailed both of these assignments to the Recorder of Decatur County, Indiana, instructing her to put them of record.

Brown's explanation that it was more convenient for him to clear the title in McTeer's name rather than Mrs. Arnett's, because the former lived in Louisville and the latter in Georgia, is not convincing. Although the chancellor decided in favor of Mrs. Arnett, he remarked that this was "imprudent, to say the least," on the part of Brown.

Mrs. Arnett testified that in April 1932, her husband executed a writing transferring this Goldschmidt note and mortgage to her in satisfaction of some $20,000 she had inherited from her father in 1923 or 1924 and which Arnett had used in his business. She was unable to produce this assignment and stated that she did not know whether she had seen it since it was executed, and that the Goldschmidt note and mortgage were kept in her lock-box in the bank (to which her husband had access) from April 1932 until May 1936. She did not know what had become of the original assignment and produced what purported to be a carbon of the original, which had been drawn by her cousin, Judge Evans. But she could not say when she had seen this carbon before, or where it came from, except "that (it) was with our papers."

It was testified by Mrs. Arnett that she received the installment payments on this note from the time she acquired it through June 1936. But Wanstrath's testimony is that he never made any payments to Mrs. Arnett and he had no notice that she owned the note until he received a letter from her attorney, Clarke, dated Jan. 11, 1938. Wanstrath produced his cancelled checks and none were made to Mrs. Arnett. His last check is dated June 10, 1936, and is payable to C. G. Arnett for $507.50 "for June installment for loan on farm;" and it is endorsed "C. G. Arnett." Also, Wanstrath produced his cancelled check dated May 31, 1934, payable to Orville K. Jones (a former owner of the note) which was endorsed by Jones, "Pay to the order of Carey Arnett" after which appears, "Cary Arnett" and under that is written "C. G. Arnett." Furthermore, Wanstrath testified to receiving a notice from a Georgia bank reading in part, "Please take notice that your note for $507.50 Prin. & Int. in favor of Mr. C. G. Arnett was due at this bank Nov. 5—1935. Please give same your prompt attention. Semi-annual installment." This notice was filed as an exhibit with Wanstrath's deposition.

Judge Evans testified that he prepared the assignment from Arnett to Mrs. Arnett and that it was attached to the Goldschmidt note and mortgage which witness mailed on June 6, 1936, to McClellan & McClellan, attorneys, Muncie, Indiana, and that he preserved a copy of this assignment. It seems that McClellan & McClellan were attempting to clear the title to the Holcroft note

which was in Mrs. Arnett's name, but Judge Evans' letter of June 6th recites, "Enclosing paper of Mr. C. G. Arnett." His testimony is not clear as to when he drew the purported assignment and he says he delivered a copy of it to Mrs. Arnett. But she has no distinct recollection of this copy or from whom she got it.

Mr. John W. Becker, a representative of the Insurance Department of Ohio, testified that in May 1936, he, accompanied by his attorney, Barton, went to Georgia to investigate the Goldschmidt mortgage to determine whether or not it was an asset of the Federal. They went to Arnett's home and Mrs. Arnett told them she did not know anything about the security—that her husband was away and would be back in a few days. Becker called Arnett over long-distance telephone from Atlanta concerning the Goldschmidt mortgage and Arnett told him he owned it; that there was another mortgage which belonged to his wife (evidently the Holcroft mortgage); that there was a suit of some kind and Becker should get in touch with Arnett's attorneys in Muncie, Indiana. These attorneys were contacted by Becker and he testified that they knew nothing about "the Wanstrath matter, but did know a little about the other matter."

On Aug. 28, 1936, the Insurance Department of Ohio wrote Arnett claiming title to the Goldschmidt paper for the Federal and demanding that he account for all sums he had collected on it, and mention was made of filing suit. Arnett forwarded that letter to McTeer, asking him to look after it for him. McTeer took it up with Brown, who wrote Oliver & Oliver, Arnett's attorney in Savannah, Ga., a long letter explaining that judgment could not be obtained against Arnett to recover approximately $6,000 he had collected on this note without getting personal service on him. Oliver & Oliver had previously written McTeer on Oct. 8, 1936, expressing the hope that he would see Becker relative to the title of the Goldschmidt and the Holcroft mortgages, thereby making unnecessary a conference between Becker and Arnett in the firm's offices. That letter refers "to the two mortgages and notes held by Mr. Arnett" and expresses a belief that the Federal had no title to them. It contains a postscript that McTeer is to use his own judgment as to whether it is advisable to acquaint Becker with the fact that Arnett had transferred these mort-

gages to his wife, saying a judgment against Arnett would be of no value.

Arnett wrote McTeer an undated letter (the envelope was postmarked Dec. 15, 1937) wherein he said, "I got your wire telling me that you had the mortgage matter settled. * * * Bill can take the two mortgages (evidently referring to the Goldschmidt and Holcroft mortgages) and get me 50% on them. I will *send* you a thousand out of this and as soon as I can get the land inspected, I can get loans on each piece. I will then give you $3,000 not lend it to you. * * *"

There is testimony by Arnett, Brown, and Harn, that both Lampton and McTeer were told many times by Arnett and Brown that Mrs. Arnett had title to this Goldschmidt mortgage and that Arnett was merely acting as her agent. This is denied by Lampton and McTeer and we are of the opinion that the exhibits to which reference has been made show that Arnett and not his wife owned this mortgage.

It is a familiar rule that this court in equity cases while giving weight to the chancellor's finding will weigh the evidence for itself and reverse the judgment when convinced that he erred. Cassinelli v. Stacy, 238 Ky. 827, 38 S. W. 2d 980; Deep v. Farmers' Nat. Bank of Lebanon, 247 Ky. 801, 57 S. W. 2d 1002; Hodges v. Daviess County, 285 Ky. 508, 148 S. W. 2d 697. Here, we are of the opinion that the exhibits which were made before the controversy arose speak louder and are entitled to more weight than the highly conflicting evidence of interested parties and witnesses. These exhibits when considered in the light of the testimony of entirely disinterested witnesses, such as Becker and Wanstrath, convince us that Mrs. Arnett never had title to the Goldschmidt note and mortgage; therefore she cannot maintain this action under sec. 18 of the Civil Code of Practice. If anybody has a cause of action against the defendants, or either of them, it is Arnett and not his wife. All other questions are reserved.

The judgment is reversed with direction that one be entered dismissing Mrs. Arnett's petition.