Ronald McCLURE, Appellant,

v.

Frank AUGUSTUS, Sheriff of McCracken County, Kentucky; Merit Board; Donnie Roberts, Chairman; Gerald Stewart, Member; Ronald Alston, Member; and Christopher Shea Nickell, Member, Appellees.

No. 2001–SC–0028–DG.

Supreme Court of Kentucky.

Sept. 26, 2002.

As Modified Oct. 8, 2002.

Tod D. Megibow, Megibow & Edwards, PSC, Paducah, Counsel for Appellant.

Mark D. Pierce, Paducah, Counsel for Appellees.

Mark L. Miller, Mary Witt Sharp, Priddy, Isenberg, Miller & Meade PLLC, Louisville, Counsel for Amici Curiae, Kentucky State Lodge Fraternal Order of Police, Inc.; Deputy Sheriffs' FOP Lodge No. 25, Inc.; and Sheriff John E. Aubrey.

Jeffrey C. Mando, Jennifer L. Langen, Adams, Stepner, Woltermann & Dusing PLLC, Covington, Counsel for Amici Curiae, Boone County Fiscal Court and Sheriff Michael Helmig.

JOHNSTONE, Justice.

In this case we address the issue of whether the scheme for terminating the employment of deputy sheriffs established in the Deputy–Sheriff Merit Board statutes, KRS 70.260 *et seq.*, is an unconstitutional violation of the separation of powers doctrine. We conclude that it is not and, therefore, reverse the Court of Appeals.

## I. Facts and Procedural History

On July 21, 1998, Sheriff Frank Augustus terminated Ronald McClure's employment as a McCracken County deputy sheriff. McClure subsequently requested a hearing before the McCracken County Deputy Sheriff Merit Board (Merit Board) to review Sheriff Augustus's decision. The Merit Board was established pursuant to KRS 70.260(1), which gives permissive authority to the "primary legislative body of each county" to "enact an ordinance creating a deputy sheriff merit board, which shall be charged with the duty of holding hearings, public and executive, in disciplinary matters concerning deputy sheriffs." Before the Merit Board could hold a hearing on the matter, Sheriff Augustus filed an action for injunctive relief and declaration of rights in the McCracken Circuit Court.

The circuit court concluded that the Deputy–Sheriff Merit Board statutes were unconstitutional and granted injunctive relief. McClure appealed to the Court of Appeals, which affirmed on grounds that KRS 70.260 *et seq.* violated the separation of powers doctrine. It reasoned that "the dismissing of deputies is the exercise of an executive power by an independently elected officer [that] the legislative branch may not usurp ... without offending Sections 27 and 28 of our constitution." *McClure v.*

*Augustus,* Ky.App., 1999–CA–002643–MR at 10 (December 15, 2000). We disagree and, therefore, reverse.

## II. Discussion

■ Section 99 of the Kentucky Constitution creates the office of county sheriff but is silent as to the power of that office to employ or to remove deputies. Thus, a sheriff has no constitutional right of either appointment or removal. Rather, a sheriff has a statutory right to appoint deputies, KRS 70.030, and an implied, common-law authority to appoint deputies, *Prater v. Strother,* 11 Ky. L. Rptr. 831, 13 S.W. 252, 253 (1890), which includes the authority to remove deputies at will. *Hodges v. Daviess County,* 285 Ky. 508, 148 S.W.2d 697, 699 (1941). The Court of Appeals' holding that a sheriff's common-law authority to remove deputies necessarily supersedes the legislative reassignment of that power contained in the Deputy–Sheriff Merit Board statutes is contrary to well-established law.

In *Johnson v. Commonwealth ex rel. Meredith,* we addressed the constitutionality of a legislative act that allowed administrative departments and agencies to employ their own legal counsel. 291 Ky. 829, 165 S.W.2d 820, 823 (1942). The then-sitting Attorney General sued to have the act declared unconstitutional because it took duties and functions away from his office and reassigned them elsewhere. *Id.* The Attorney General argued *inter alia* that the power to represent the Commonwealth as sovereign in all operations and forums was an inherent power of the office of attorney general that could not be delegated to anyone else. *Id.* at 826. In rejecting this argument, we stated, "[W]hile the Attorney General possesses all the power and authority appertaining to the office under common law and naturally and traditionally belonging to it, neverthe-

less *the General Assembly may withdraw those powers and assign them to others* or may authorize the employment of other counsel for the departments and officers of the state to perform them." *Id.* at 829 (emphasis added).

In *Brown v. Barkley,* we held that the Governor could not transfer legislatively-created functions from one executive agency to another executive agency without legislative authority to do so. Ky., 628 S.W.2d 616, 623 (1982). In so holding, we stated that, if the Governor had the inherent executive power to make the transfers in question, then that inherent power was subordinate to the will of the General Assembly. *Id.* Other cases make clear that the executive power of removal is likewise subordinate to will of the General Assembly. *See, e.g., McChesney v. Sampson,* 232 Ky. 395, 23 S.W.2d 584, 586 (1930) (Governor could not remove his own appointee without statutory authority).

*Johnson* and *Brown* stand for the proposition that the General Assembly may take common-law powers away from executive constitutional officers and assign them to different executive officers or agencies without violating the constitution, which is all that occurred in this case

■ In enacting the Deputy–Sheriff Merit Board statutes, the General Assembly permitted McCracken County to elect to transfer the executive power of removal from one executive, the sheriff, to another, the Merit Board, which is an administrative agency that acts in an executive capacity when it makes personnel decisions. *See Meyers v. Chapman Printing Co.,* Ky., 840 S.W.2d 814, 820 (1992) (decision-making performed by an administrative agency is an executive function); *Gamm v. City of Covington,* 236 Ky. 711, 33 S.W.2d 697, 698 (1930) (board of commissioners acts in an executive capacity when making appointments pursuant to statutory authority).

Thus, while Sheriff Augustus had the common-law authority to remove McClure at will, that authority "must yield to the superior policy of legislative enactment...." *Com. ex rel. Cowan v. Wilkinson*, Ky., 828 S.W.2d 610, 614 (1992).

For the reasons set forth above, the decision of the Court of Appeals is hereby reversed and this case is remanded to the McCracken Circuit Court with instructions to dissolve its injunction and to vacate its order declaring that the Deputy–Sheriff Merit Board statutes are unconstitutional.

COOPER, KELLER, STUMBO, and WINTERSHEIMER, JJ., concur.

GRAVES, J., dissents by separate opinion, with LAMBERT, C.J., joining that dissent.

GRAVES, Justice, dissenting.

Respectfully, I dissent. The Deputy Sheriff Merit Board statutes encourage the exercise of arbitrary power in violation of the Kentucky Constitution. These statutes are so vague and ambiguous that they invite arbitrary enforcement. Their illegitimacy was so self-evident that the Attorney General, after receiving legally prescribed notice, chose not to defend their constitutionality.

Section 2 of the Kentucky Constitution provides in unmistakable terms that "absolute and arbitrary power ... exists nowhere in a republic...." Section 2 protects against vague and conflicting legislation. When the Deputy Sheriff Merit Board statutes are examined using the criteria of § 2 of the Kentucky Constitution, they fall far short of being constitutional. A statute is impermissibly vague if it is written in a manner that encourages arbitrary and discriminatory enforcement. *Walker v. Kentucky Dept. of Education*, Ky.App., 981 S.W.2d 128 (1998). Indeed, even clear and unambig-

uous statutes are unconstitutional if they may be enforced in an arbitrary manner. *Commonwealth v. Foley*, Ky., 798 S.W.2d 947 (1990). The subject statutes miss the mark when tested by these constitutional standards.

The only clear purpose for the merit board presented by KRS 70.260 et seq. is that of holding hearings in disciplinary matters concerning deputy sheriffs. However, the rest of the statutes lack the detailed instructions and guidelines which must accompany a delegation power. Several indispensable requirements are lacking. First, although KRS 70.270(2) grants power to the merit board to review every action in the nature of a dismissal, suspension, or reduction made by the sheriff, no standard of review is mentioned. Second, the statutes do not set forth any procedures for the board to use concerning its decisions, failing even to specify which party has the burden of proof at a merit board hearing. Third, while KRS 70.260(3) specifies the number and selection process for persons to sit on the merit board, there is no requirement that the persons selected have any legal training or adjudicative experience. Fourth, KRS 70.273(5) mandates that deputy sheriffs "in a policy-making or confidential position" be excluded from the merit board system. There is no further guidance on defining "policy-making or confidential" positions, and since all deputies arguably occupy confidential positions, a patent ambiguity exists. Although the statutes have other deficiencies, these examples point out the constitutional infirmities. Since the merit board requires no credentials, has no standard of review to apply, and no guidance concerning the burden of proof, it is apparent that the indefiniteness of the merit board statute invites arbitrary decision making.

A "review" of a deputy sheriff's discharge by the merit board appears appealing. However, as this Court recognized in *Puckett v. Miller*, Ky., 821 S.W.2d 791 (1992), the absence of evidence and decision-making standards renders the right of review illusory. With nothing to guide them, personal opinions will carry the day for the politically-appointed merit board members, and inconsistent, capricious decisions will likely result. Further, discharged deputy sheriffs have an adequate remedy at law for any improper firing. They may bring suit in circuit court if they have been discriminated against or otherwise unlawfully discharged. Consequently, the court system provides the only legitimate review available for a discharged deputy sheriff.

This Court is obligated to construe statutes in a constitutional light whenever possible. However, we must deal with the statutes as written. Although it is conceivably possible to rewrite the statutes so that they satisfy the confines of the constitution, this Court lacks authority to add the words which would cure the statute's defects. *Diemer v. Commonwealth Transportation Cabinet*, Ky., 786 S.W.2d 861 (1990); *Musselman v. Commonwealth*, Ky., 705 S.W.2d 476 (1986). While we may construe an ambiguous statute to have a constitutional meaning, we cannot cure these unconstitutionally vague statutes by fleshing out the necessary guidelines and standards which were omitted by the legislature. It is not for this Court to speculate as to what guidelines the legislature would lay down for the merit board. That is within the exclusive dominion of the legislature.

The Deputy Sheriff Merit Board, as authorized by KRS 70.260–273, violates Sections 27 and 28 of the Kentucky Constitution because it allows an unelected group of political appointees to infringe upon the constitutionally-elected sheriff's power to discharge his deputies. This is inconsistent with the Kentucky Constitution.

Sections 27 and 28 of the Kentucky Constitution address the separation of powers.[1] Section 27 establishes that the powers of each branch of government will be distinct and separate, while Section 28 requires each branch of government to refrain from exercising any power that has been granted to a different branch. A sheriff is an elected executive officer, and allowing the legislature to usurp his power to discharge his deputies is an affront to the Kentucky Constitution.

It has long been recognized that the sheriff is not an officer of the state. *Shipp v. Bradley*, 210 Ky. 51, 275 S.W. 1 (1925). The sheriff is, instead, the chief law enforcement officer of the county, under the executive branch of the county government. The sheriff's duties require him to perform a wide variety of tasks and, as such, it is necessary for the sheriff to appoint deputies to act as his agents. Deputies have historically been employed at the sheriff's will. *Hodges v. Daviess County*, 285 Ky. 508, 148 S.W.2d 697

1. Section 27. Powers of government divided among legislative, executive and judicial departments.—The powers of the government of the Commonwealth of Kentucky shall be divided into three distinct departments, and each of them be confined to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.

Section 28. One department not to exercise power belonging to another.—No person or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted.

(1941); *Day v. The Justices of the Fleming County Court,* 42 Ky. 198, 3 B. Mon. 198 (1842). The nature of the office makes it indispensable that the sheriff have this power because a deputy acts with the full authority of the sheriff, as evidenced by the fact that the deputy must take the same oath as the sheriff. Consequently, a sheriff is liable for the acts of his deputies when acting in their official capacity. This principle is well-settled in our law. *West v. Nantz' Administrator,* 267 Ky. 113, 101 S.W.2d 673 (1937); *Stephens v. Wilson,* 115 Ky. 27, 72 S.W. 336 (1903). The sheriff is a constitutionally-elected officer who may be removed from office if he fails to perform his duties. Since the sheriff is responsible as principal for the actions of his deputies, it follows that the delinquency of his deputies has the potential of leading directly to the sheriff's removal from office. Consequently, good government requires that the sheriff retain control over the selection and behavior of his deputies.

The sheriff is an executive official, elected by the citizens of his county. The legislature, in enacting the subject statutes, has stripped the sheriff of the power to discharge his deputies and transferred that power to an unelected group of political appointees. Section 28 of our constitution is clear in its requirement that each branch of government refrain from exercising power belonging to another branch. The argument that the language of Section 28 allows the legislature to retain all residual powers not expressly reserved for another branch fails. In *Sibert v. Garrett,* 197 Ky. 17, 246 S.W. 455, 457 (1922), this Court clarified the meaning of Section 28:

> In other words, the Legislature may perform all legislative acts not expressly or by necessary implication withheld from it, but it may *not* perform or undertake to perform executive or judicial acts.... To adopt the latitudinous construction that the Legislature may do anything not expressly or impliedly prohibited by the Constitution would, to our minds, at once destroy the separation of the powers of government into the three great departments.

It is clear that discharging a deputy sheriff is an executive act, and the power to discharge is reserved for the sheriff alone. The legislature lacks legislative authority to give the power of removal to a Deputy Sheriff Merit Board. Yet the subject statutes seek to do just that. KRS 70.260 et seq. is in violation of Sections 27 and 28 of our Constitution and should be stricken down as unconstitutional.

For the foregoing reasons, I would affirm the decision of the Court of Appeals.

LAMBERT, C.J., joins this dissenting opinion.