OPINION OF THE COURT BY CHIEF JUSTICE MINTON
We granted discretionary review to determine whether a sheriff's termination of a deputy sheriff is constrained by the procedural due-process protections purportedly afforded to the deputy sheriff under a now-outdated version of KRS 15.520[1] . We *354 hold that KRS 15.520 does not apply in this case to afford Deputy Warren Lanham any due process requirements. Accordingly, we reverse and remand the case to the trial court with direction to enter summary judgment in favor Sheriff Marty Elliott.
I. FACTUAL AND PROCEDURAL BACKGROUND
Warren Lanham was hired as a deputy sheriff in the Boyle County Sheriff's Department in 2002. He was eventually promoted to the post of Chief Deputy Sheriff. During the events at issue in this case, Marty Elliott was the Sheriff of Boyle County.
On October 1, 2012, Sheriff Elliott received complaints from members of a Boyle County grand jury, relayed to him via oral notification from Boyle Circuit Court Judge Darren Peckler. Those complaints disapproved Chief Deputy Lanham's handling of several criminal investigations. Specifically, the complaints highlighted Chief Deputy Lanham's alleged shoddy investigative work on cases presented to the. grand jury, including the fact that the grand jury felt compelled to return no true bills in cases Chief Deputy Lanham investigated. Additionally, the grand jury recalled a specific Lanham investigation into a makeshift meth lab in which he allegedly blundered, destroying physical evidence of a "pill soak" used to manufacture methamphetamine.
Because of these complaints, Sheriff Elliott immediately demoted Lanham from Chief Deputy Sheriff to Deputy Sheriff on the same day he received the complaints as relayed by Judge Peckler. On October 10, 2012, after further investigation, Sheriff Elliott suspended Deputy Lanham, delivering him a written confirmation of that suspension on October 15. On that same day, Sheriff Elliott verbally informed Deputy Lanham that he was fired as of that day, but sent a formal letter on October 26, 2012, officially terminating Deputy Lanham's employment effective October 17, 2012.
Deputy Lanham then sued Sheriff Elliott, in his individual and official capacities, alleging that Sheriff Elliott violated the due-process procedures set forth in KRS 15.520, otherwise known as the Police Officers' Bill of Rights.
The trial court granted Sheriff Elliott's motion for summary judgment, basing its decision on an unpublished Court of Appeals' decision with similar facts.[2] That case held that in a county, like Boyle County, where there has been no merit review board created by the county's legislative body, deputy sheriffs are at-will employees who are not entitled to an administrative hearing before being discharged. On appeal, the Court of Appeals reversed the ruling of the trial court, finding that KRS 15.520 mandates that a sheriff, like Sheriff Elliott, who elects to receive KLEFP[3] funding is bound by the due-process procedures of that statute. The Court of Appeals remanded the case to the trial court for further proceedings applying the statute to the present case.
II. ANALYSIS
"Insofar as this case requires us to construe statutory provisions, we do so de *355 novo. "[4] The entirety of this case rests on the interplay of various statutes and their subsections.
To start, KRS 70.030(1) states, "The sheriff may appoint his or her own deputies and may revoke the appointment at his or her pleasure except where that revocation is prohibited by the provisions of KRS 70.260 to 70.273." An analysis of the issue before us today requires us to start with the premise that deputy sheriffs are hired and fired at-will by their sheriffs under KRS 70.030(1), subject to certain limitations.
KRS 70.260(1) states, "The primary legislative body of each county may enact an ordinance creating a deputy sheriff merit board, which shall be charged with the duty of holding hearings, public and executive, in disciplinary matters concerning deputy sheriffs."[5] So KRS 70.260(1) affords counties the option of creating a deputy sheriff merit board that handles disciplinary matters concerning deputy sheriffs but does not mandate the creation of such a board. It is undisputed that Boyle County has not created a deputy sheriff merit board. KRS 70.261 through 70.273 generally discuss various aspects of the board and the due-process protections afforded to deputy sheriffs in certain situations. But because Boyle County does not have a deputy sheriff merit board, the due-process protections of KRS 70.260 through 70.273 do not apply in that county.
With this statutory framework in mind, we now turn toward the statute at issue in this case. KRS 15.520(1), called the Police Officers' Bill of Rights, states:
In order to establish a minimum system of professional conduct of the police officers of local units of government of this Commonwealth, the following standards of conduct are stated as the intention of the General Assembly to deal fairly and set administrative due-process rights for police officers of the local unit of government and at the same time providing a means for redress by the citizens of the Commonwealth for wrongs allegedly done to them by police officers covered by this section.[6]
This Court in Pearce v. University of Louisville held this language to mean that " KRS 15.520 applies to disciplinary actions that originate from within a police department as well as to disciplinary actions initiated upon complaints from persons outside the police department ," if KRS 15.520(4) is satisfied.[7] KRS 15.520(4) states that the Police Officers' Bill of Rights "shall apply only to police officers of local units of government who receive funds pursuant to KRS 15.410 through 15.992."[8] The "funds" that this statute describes is the Kentucky Law Enforcement Foundation Program Fund (KLEFP funds).[9] So KRS 15.520 only applies in this case if Deputy Lanham is considered to be a "police officer."
Unfortunately, the applicable version of KRS 15.520 provides no definition of "police officer."[10] Given this lack of clarity, we *356 must determine what the legislature meant by "police officer" to determine who KRS 15.520 affords due process rights to.
In making this determination, we take note of the traditional differences and distinctions between sheriffs' departments, sheriffs, and sheriffs' deputies on one hand, and police departments and police officers on the other. We also take note of the fact that KRS 15.520 was first enacted in 1980, while the specific due-process protections afforded to sheriffs' deputies outlined throughout KRS 70.260 through 70.273 were first enacted in 1992 and beyond.[11] If the legislature truly meant for KRS 15.520 to apply to all law enforcement personnel, it would not have had to create a separate statutory framework for due-process rights afforded to sheriffs' deputies because KRS 15.520 appears to provide greater due process protection to police officers than KRS 70.260 through 70.273 provide to sheriff deputies. Both sets of statutes outline specific due-process rights for law enforcement personnel. But KRS 15.520 explicitly applies to police officers, not to deputy sheriffs, to which KRS 70.260et al. apply. All of this leads us to the conclusion that KRS 15.520 was not meant to provide due process rights to sheriffs' deputies.
III. CONCLUSION
So we conclude that KRS 15.520 does not afford Deputy Lanham any due process rights in his termination. We reverse the Court of Appeals and remand this case to the trial court with instructions to enter summary judgment consistent with this opinion.
Minton, C.J.; Cunningham, Hughes, Keller, Venters, and Wright, JJ., sitting.
Minton, C.J.; Cunningham, Hughes, and Venters, JJ., concur.
Keller, J., concurs in result only.
Wright, J. concurs in result only by separate opinion.
VanMeter, J., not sitting.
WRIGHT, J., CONCURRING IN RESULT ONLY:
While I agree with the majority opinion's result, I differ as to the reasoning. I would not, as the majority has, say that deputy sheriffs are not "police officers." As the majority points out, that term is not defined by the statute. I do not believe the Court needs to address the issue here. Instead, I agree with the analysis of Judge Acree's separate opinion in which he dissented from the majority in the Court of Appeals' opinion rendered below.
In McClure v. Augustus, this Court recognized that a sheriff possessed the authority to remove a deputy at will, but, in that case, the authority had been transferred to the Merit Board. 85 S.W.3d 584, 586 (Ky. 2002) ("In enacting the Deputy-Sheriff Merit Board statutes, the General Assembly permitted McCracken County to elect to transfer the executive power of removal from one executive, the sheriff, to another, the Merit Board, which is an administrative agency that acts in an executive capacity when it makes personnel decisions.... Thus, while Sheriff Augustus had the common-law authority to remove McClure at will, that authority 'must yield *357 to the superior policy of legislative enactment....' " Commonwealth ex rel. Cowan v. Wilkinson, 828 S.W.2d 610, 614 (Ky. 1992) ). I reiterate that a Merit Board had not been created in the case at bar. Therefore, Sheriff Elliott retained the authority to remove Deputy Lanham at will.
I also point out the legislature recognized the possibility that not all sheriffs' offices would establish a Merit Board when it enacted KRS 70.030(5) subsequent to KRS 15.520. That particular subsection provides, in pertinent part: "a sheriff's office may, upon the written request of the sheriff, participate in the Kentucky Law Enforcement Foundation Program Fund authorized by KRS 15.410 to 15.510 without the county establishing a deputy sheriff merit board." KRS 70.030(5).
Since there was no Merit Board in place, Sheriff Elliott had the authority to remove Deputy Landham. Therefore, I agree with the majority's result and would reverse the Court of Appeals' opinion, but for these differing reasons.

KRS 15.520 was amended by the 2015 Regular Session of the Kentucky General Assembly, and the amended version of the statute became effective on June 24, 2015. Because the events giving rise to this case occurred before the effective date of the amendment and the amendment does not have retroactive application, the amended version is inapplicable to this case. So we decide this case using the version of KRS 15.520 as it existed at the time the facts of this case arose.

Vincent v. Doolin, No. 2003-CA-001150, 2005 WL 928649 (Ky. App. April 25, 2005).

Kentucky Law Enforcement Foundation Program.

Commonwealth v. Morseman, 379 S.W.3d 144, 148 (Ky. 2012) (citing Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth Transp. Cabinet, 983 S.W.2d 488, 490-91 (Ky. 1998) ).

(emphasis added).

(emphasis added).

448 S.W.3d 746, 748 (Ky. 2014) (emphasis added).

(emphasis added).

See KRS 15.410 through 15.515.

KRS 15.420(2) does provide a definition of "police officer," but, by the plain language of the statute, only applies to KRS 15.410 to 15.510, not 15.520.

"[T]his Court presumes that the Legislature knew of pre-existing statutes when it enacted a later statute on the same subject matter." Osborne v. Commonwealth, 185 S.W.3d 645, 649 (Ky. 2006). "Where there is an apparent conflict between statutes or sections thereof, it is the duty of the court to try to harmonize the interpretation of the law so as to give effect to both sections or statutes if possible." Ledford v. Faulkner, 661 S.W.2d 475, 476 (Ky. 1983).